Docket No. 84692–Agenda 6–September 1999.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GLENN WILSON, Appellant.

Opinion filed May 18, 2000.

JUSTICE RATHJE delivered the opinion of the court:

Defendant, Glenn Wilson, appeals the trial court’s dismissal of his post-conviction petition. Because defendant was sentenced to death for the underlying murder conviction, he appeals directly to this court. See 134 Ill. 2d R. 651(a).

BACKGROUND

A jury in the circuit court of McLean County convicted defendant of the armed robbery of the S&S Liquor Store in Bloomington and of three counts of murder. The same jury found defendant eligible for the death penalty. Defendant waived his right to a jury for the aggravation-mitigation phase of the death penalty hearing. The trial court found that there were no mitigating factors sufficient to preclude a sentence of death and sentenced defendant to death. Defendant appealed, and we affirmed his convictions and death sentence. 
People v. Wilson
, 164 Ill. 2d 436 (1994).

Thereafter, defendant filed a timely 
pro se
 post-conviction petition. Subsequently, the trial court appointed counsel for defendant, and he filed an amended petition. Three of defendant’s claims involve the assertion that his attorney was ineffective for failing to properly investigate defendant’s psychological testimony. To pursue these claims, defendant sought funds to hire an expert. The trial court denied defendant’s request for funds. The State moved to dismiss defendant’s petition, and the trial court granted the State’s motion.

Defendant appeals, arguing that (1) the trial court abused its discretion in denying defendant’s request for funds; (2) the trial court erred in dismissing defendant’s petition; (3) defendant was denied the effective assistance of appellate counsel when counsel failed to argue that the State was precluded from seeking the death penalty; (4) the trial court arbitrarily and capriciously imposed a premature deadline for the filing of defendant’s amended petition; and (5) this court should adopt a uniform test governing when an expert should be appointed during both trial and post-conviction proceedings.

ANALYSIS

Appointment of an Expert

Defendant alleges that he was denied the effective assistance of counsel when his attorney failed to investigate defendant’s mental condition and to use the evidence he would have discovered (1) to support defendant’s motion to suppress statements; (2) to present an insanity defense; and (3) as mitigation during defendant’s sentencing hearing. To support these claims, defendant requested that the trial court appropriate funds to allow him to hire an expert. Defendant explained that his medical records and examinations by other experts reveal that he needs to be examined by a neuropsychiatrist.

In support of his motion, defendant attached medical records that include a notation that defendant should be evaluated for temporal lobe epilepsy “as a possible cause of rage attacks.” Defendant also attached affidavits from Harry Gunn, a clinical psychologist, and Jonathan Hess, a clinical neuropsychologist. Gunn’s affidavit states that “neuropsychological testing is highly recommended.” Hess’s affidavit states that, since childhood, defendant has suffered from a seizure disorder and that defendant has never been diagnosed or treated by a behavioral neurologist or neuropsychiatrist who is “educated in the psychiatric consequences of seizure disorders.” Defendant’s history reveals that violent behavior often follows one of his seizures. Based upon his examination of defendant, Hess believes that defendant suffers from “episodic discontrol,” or rage attacks. A person suffering from a rage attack “would be unable to control his behavior or to conform his behavior to the requirements of the law.” Finally, Hess states that, to properly diagnose defendant, “either a behavioral neurologist (who is also an epileptologist) or a neuropsychiatrist” will have to conduct a 24-hour ambulatory EEG.

Defendant therefore requested funding for an ambulatory EEG. Defendant’s attorney averred that he had contacted Dr. Lyle Rossiter, Jr., who had agreed to perform an ambulatory EEG and to examine and evaluate defendant. The cost for the test, test interpretation, and evaluation of defendant totaled $3,786. The trial court denied defendant’s motion to retain Dr. Rossiter. On appeal, defendant contends that the trial court abused its discretion in denying this motion.

Trial courts are permitted to exercise a great deal of discretion in resolving post-conviction petitions. 
People v. Wright
, 149 Ill. 2d 36, 54 (1992). This is done to ensure that defendants are permitted an opportunity to advance claims of constitutional deprivation. 
Wright
, 149 Ill. 2d at 54. Whether to allow a defendant’s motion for the appointment of an expert in a post-conviction proceeding is a matter that lies within the trial court’s discretion. 
People v. Hall
, 157 Ill. 2d 324, 339 (1993), 
Wright
, 149 Ill. 2d at 58. The key question to consider is whether the testimony would assist the court in deciding the question before it. 
Hall
, 157 Ill. 2d at 339-40.

To decide that question here, we must consider the claims under which defendant’s request for an expert arises. Defendant alleges that the expert is needed to allow him to demonstrate that his attorney was ineffective for failing to investigate defendant’s mental condition. In particular, defendant contends that, had trial counsel properly investigated defendant’s mental health, counsel could have (1) presented evidence during the hearing on defendant’s motion to suppress to demonstrate that defendant’s statements should have been suppressed; (2) presented an insanity defense; and (3) demonstrated during the sentencing hearing that a statutory mitigating factor was present.

To succeed in his claims that he was denied the effective assistance of counsel, defendant must allege facts to demonstrate that his attorney’s representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel’s errors, the result of the proceeding would have been different. 
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Because a defendant must satisfy both prongs of the test, the failure to satisfy either prong precludes a finding of ineffective assistance of counsel under 
Strickland
. 
People v. Shaw
, 186 Ill. 2d 301, 332 (1998).

We now address individually each of defendant’s claims.

Motion to Suppress

Defendant alleges that his mental problems, which include attention and short-term memory problems, “make it extremely doubtful that [defendant’s] statements were made knowingly, understandingly, and voluntarily.” Defendant contends that, had his trial counsel properly investigated defendant’s mental history, counsel would have discovered evidence that would have supported the allegation that defendant was unable to knowingly and intelligently waive his 
Miranda
 rights.

Defendant contends that the reports from Hess and Gunn reveal mental problems affecting defendant’s attention and thinking problems. He asserts that an examination by Dr. Rossiter is necessary to “establish the etiology” of defendant’s mental problems. While both Hess and Gunn agree that Dr. Rossiter’s report is necessary to reveal the cause of defendant’s mental problems, neither asserts that this information is necessary to ascertain the effect of defendant’s mental problems on his ability to waive his 
Miranda
 rights. Because defendant has failed to demonstrate that the etiology of his mental problems is necessary to demonstrate how those problems affect his ability to waive his 
Miranda
 rights, the trial court did not abuse its discretion in denying defendant’s request for funding to investigate this claim.

Insanity Defense

Defendant argues that the evidence that Dr. Rossiter could provide would establish that he was prejudiced by defense counsel’s failure to present an insanity defense. Before addressing this question, however, we turn our attention to whether defendant has pleaded sufficient facts to demonstrate that the actions of his trial counsel fell below an objective standard of reasonableness.

Strickland
 requires attorneys to render reasonably effective assistance that is within the range of competence demanded of attorneys in criminal cases. The standard is one of objective reasonableness, under “prevailing professional norms.” 
Strickland
, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65.

Here, defendant has failed to plead facts that demonstrate that his attorney’s actions fell below an objective standard of reasonableness when the attorney failed to investigate and present an insanity defense. Defendant’s alleges that his attorney knew that when defendant was first arrested on the weapons charge he tried to hang himself. Further, a mitigation report that trial counsel may or may not have seen before trial revealed that defendant suffered from epilepsy, was probably mildly retarded, and “could be suffering from [an] extreme mental or emotional disturbance.” Defendant asserts that these facts are sufficient to have required trial counsel to investigate the possible existence of an insanity defense. We disagree.

Even if we accept defendant’s unsupported contention that trial counsel was able to review the mitigation report before trial, we do not believe that the sum of the evidence available to trial counsel would have placed a reasonable attorney on notice that an insanity defense was a possibility. Except for his statements to the police, defendant has continually and steadfastly denied participating in the crime. Additionally, nothing in defendant’s records provides any indication that his mental problems would meet the definition of legal insanity (see Ill. Rev. Stat. 1987, ch. 38, par. 6–2(a) (explaining that a defendant is not criminally responsible for his conduct if “as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law”) (now codified, as amended, at 720 ILCS 5/6–2(a) (West 1998))). At best, the records available to counsel at the time of trial revealed that defendant is probably mildly retarded and that he suffers from epilepsy. We are simply unable to agree with defendant that this limited information, which in no way indicates that defendant was unable to appreciate the criminality of his conduct or unable to conform his conduct to the requirements of the law, was sufficient to require trial counsel to investigate the possibility of an insanity defense.

Because trial counsel’s actions did not fall below an objective standard of reasonableness, we must reject defendant’s argument that his attorney was ineffective. Moreover, because defendant’s ineffective assistance claim fails, the trial court did not abuse its discretion in failing to appropriate funds for an expert to examine defendant to determine whether an insanity defense could have reasonably been expected to be successful.

Mitigation Evidence

Defendant also argues that his attorney was ineffective for failing to investigate and introduce evidence of defendant’s extreme mental or emotional disturbance. To support this claim, defendant again relies upon the mitigation report. The person who prepared this report stated, in conclusion, that “it is possible, given Glenn’s history of mental problems, he could be suffering from extreme mental or emotional disturbance.” In his post-conviction petition, defendant asserts that his attorney was ineffective because “trial counsel presented no evidence that Glenn Wilson was under extreme mental or emotional disturbance at the time of the murders.” See 720 ILCS 5/9–1(c)(2) (West 1998) (noting that a mitigating factor is that “the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance, although not such as to constitute a defense to prosecution”). Defendant asserts that, had evidence of this extreme mental or emotional disturbance been discovered and presented to the trial court, a reasonable probability exists that he would not have been sentenced to death.

We note that defendant limits his argument to the statutorily identified mitigating factor relating to an extreme mental or emotional disturbance. This factor requires defendant to prove not only that he suffers from an extreme mental or emotional disturbance, but also that he 
was under the influence
 of that disturbance 
when he committed the murders
. See 720 ILCS 5/9–1(c)(2) (West 1998); 
People v. Johnson
, 183 Ill. 2d 176, 206 (1998); see also 
People v. Smith
, 176 Ill. 2d 217, 256 (1997); 
People v. Phillips
, 127 Ill. 2d 499, 534 (1989). Significantly, defendant could have argued, but chose not to argue, the presence of a nonstatutory mitigating factor; specifically, defendant could have argued that he suffers from an extreme mental or emotional disturbance, without arguing that he was under the influence of that disturbance when he committed the murders. Because defendant chose to invoke only the statutory mitigating factor, an essential element of defendant’s claim is that he was under the influence of his alleged extreme mental or emotional disturbance when he murdered three persons in the liquor store.

Here, even if defendant has the frontal lobe damage that he alleges Dr. Rossiter could diagnose, no evidence exists that would support a conclusion that, when defendant committed the murders, he was under the influence of a mental or emotional disorder. Nothing in the record supports a conclusion that the robbery of the liquor store was anything other than a calculated plan to rob the store. Admittedly, defendant told the police that the shootings were “a spur of the moment thing” and “not supposed to happen.” These statements, however, indicate only that, although the robbery was planned, the murders were not. These statements do not indicate that when defendant shot the people he was under the influence of a “rage attack.” Stated simply, defendant alleges that his alleged disorder causes him to suffer uncontrollable “rage attacks.” Here, no facts exist or are alleged that would support a finding that the murders were committed by an individual under the influence of a rage attack.

Defendant has not demonstrated that, even if he suffers from an extreme mental or emotional disturbance, he was under the influence of this disturbance when he committed the murders. Because defendant has not demonstrated that the alleged mental disturbance meets the criteria of the mitigating factor upon which he relies, we must conclude that the trial court did not abuse its discretion in denying defendant’s motion to appropriate funds for an examination by Dr. Rossiter.

Due Process

Defendant also asserts that the trial court violated his due process rights when it denied defendant’s motion to appoint an expert. Defendant claims that, by refusing to appropriate funds to employ Dr. Rossiter, the trial court effectively precluded him from arguing that he received the ineffective assistance of counsel. As we explained above, however, the trial court did not abuse its discretion when it denied defendant’s motion to appropriate funds to employ Dr. Rossiter.

Because defendant has failed to demonstrate that the examination is necessary to present his claims of ineffective assistance of counsel, the trial court did not deprive defendant of his due process rights by denying defendant’s motion to appropriate funds to employ Dr. Rossiter.

Dismissal of Defendant’s Petition

Defendant next argues that his petition substantially alleges a deprivation of his constitutional rights and that, therefore, the trial court erred in dismissing the petition. As noted above, defendant has failed to demonstrate that his attorney’s actions fell below an objective standard of reasonableness when he failed to investigate and present an insanity defense. Moreover, defendant has failed to plead facts that demonstrate that he was operating under a mental or emotional disturbance at the time of the murders. Because defendant has failed to plead facts that would support his arguments, the trial court did not err in dismissing these two claims.

We turn now to the other two claims raised by defendant. In so doing, we note that we review 
de novo
 the trial court’s dismissal of defendant’s petition. 
People v. Coleman
, 183 Ill. 2d 366, 389 (1998). Defendant is entitled to a hearing on his post-conviction petition if his allegations of fact make a substantial showing that he is imprisoned in violation of the state or federal constitution. 
Coleman
, 183 Ill. 2d at 382.

Motion to Suppress

As we explained earlier, the basis for this claim is that trial counsel was ineffective for failing to investigate defendant’s mental history and mental abilities and that this failure to investigate prevented trial counsel from adequately presenting and prevailing on defendant’s motion to suppress statements. Defendant asserts that, if evidence of his mental problems would have been presented, a reasonable probability exists that his statements would have been suppressed.

The evidence defendant now relies upon reveals that defendant suffers from depression and seizures and is a suicide risk. Additionally, defendant has suffered from seizures since he was a child and he has taken anticonvulsant and psychotropic medication. Hess’ report reveals that defendant has attention and concentration problems that may make him appear to be following a conversation when he actually is not. Moreover, defendant has “marked” memory deficits, “inconsistent memory,” and “anterograde amnesia” and is “unlikely to reconstruct any prior events with any accuracy.” Gunn’s report states that defendant is a “very slow thinker” who shows “borderline intellectual functioning” and who has a very weak short term memory and a weak memory overall.

Significantly, the reports from Hess and Gunn do not assert that defendant is incapable of understanding his 
Miranda
 rights or of waiving those rights. Instead, they simply reveal that he has memory and mental problems. These facts, without more, are insufficient to require the trial court to hold an evidentiary hearing. Without presenting some explanation of why defendant’s mental problems render him incapable of either understanding or waiving his 
Miranda
 rights, defendant has failed to present sufficient facts to make a substantial showing that he is imprisoned in violation of his constitutional rights.

Michele Ritza

Defendant also contends that his attorney was ineffective for failing to investigate the existence of and to present Michele Ritza as a witness during the aggravation-mitigation phase of his sentencing hearing. Ritza has been defendant’s friend since they were children. Her affidavit reveals that she would have testified that defendant is a decent and caring person. Further, she would have corroborated evidence that defendant has difficulty following conversations.

Defendant’s petition, however, never explains why trial counsel would have any reason to know that Ritza exists. Without some explanation from defendant as to why counsel would have been expected to know of Ritza and that she might be a favorable witness, we are simply unable to conclude that counsel’s actions fell below an objective standard of reasonableness when he did not interview her. Consequently, we must conclude that the trial court did not err when it dismissed defendant’s post-conviction petition without an evidentiary hearing.

State’s Alleged Promise Not to Seek the Death Penalty

Defendant next argues that his appellate attorney in his direct appeal was ineffective for failing to argue that the State was precluded from seeking the death penalty. The basis for defendant’s argument arises from an alleged agreement between defendant and the State. Defendant asserts that this agreement provided that he would tell the State what he knew of the robbery of the liquor store and, in exchange, the State would agree not to seek the death penalty against him.

Before defendant’s trial, trial counsel moved to preclude the State from seeking the death penalty. At the hearing on defendant’s motion, Officer Jeff Sanders testified that he arrested defendant on an unrelated weapons charge. After taking defendant to the hospital because defendant had attempted to hang himself, Sanders began talking with defendant in an attempt to calm him. During this time, defendant stated that he wanted to go home. Sanders told defendant that defendant should consider working as an informant for the police. Eventually, the discussion turned to the S&S murders. Defendant told Sanders that “everyone knew who did that.”

John Schwulst, who represented defendant on the unlawful use of weapons charge, testified that he was asked to go to the police station because law enforcement officials wished to speak to defendant about the S&S murders. Although Schwulst had difficulty remembering what exactly was said, he testified that the general terms of the deal that was discussed were that defendant would tell the police what he knew about the S&S murders. If defendant told the truth and cooperated, the State would not seek the death penalty. Schwulst conceded that defendant did not reveal any inculpatory information and told the police “nothing of any value.”

Assistant State’s Attorney John Campbell testified that he told defendant that, if defendant told everything that he knew and if he was truthful and if he was not the person who “pulled the trigger,” then defendant “may be in a position where he could possibly save his life.” Campbell made clear to defendant, however, that he was making no specific promises. Campbell also testified that, while defendant was speaking with the State, Schwulst said to defendant, “Don’t B.S. the police. They want the truth.” Sergeant Dennis O’Brien corroborated Campbell’s testimony.

State’s Attorney Charles Reynard testified that he discussed the ground rules of the interview with Campbell. They agreed that, if defendant was not the shooter and if he told the complete truth, he would be given “unspecified considerations with regard to the possible penalty imposed.”

Officer Dan Katz testified that defendant had been arrested for unlawful use of weapons and wanted to get out of jail. Katz told defendant that he could not promise or guarantee defendant anything. Defendant responded, “If you’d have answered that question any other way I would have known that you were lying.” Eventually, defendant agreed to talk about the S&S murders. Katz corroborated Campbell’s testimony about the ground rules of Campbell’s interview of defendant.

After considering this evidence and hearing argument, the trial court, without explanation, denied defendant’s motion. Defendant’s trial counsel again raised this issue in his post-trial motion. On appeal, however, appellate counsel did not raise this argument. Defendant now contends that his appellate counsel was ineffective for failing to raise this argument. In particular, defendant argues that “no public defender would have allowed his client to talk to the police in a capital case under the circumstances present on June 9, 1989, in this case, without having an agreement in principle that if the client talked he would not be charged with the death penalty.”

The 
Strickland
 analysis governs claims of ineffective assistance of appellate counsel as well as trial counsel. 
People v. Coleman
, 168 Ill. 2d 509, 523 (1995). Thus, to succeed in this claim, defendant must show that counsel’s failure to raise the issue on direct appeal was objectively unreasonable and that, but for this failure, a reasonable probability exists that defendant’s conviction or sentence would have been reversed.

After reviewing the evidence, we do not believe that a reasonable probability exists that, had appellate counsel raised this issue, this court would have concluded that the trial court erred in finding that the State was not precluded from seeking the death penalty. Here, the trial court held an evidentiary hearing and found that the State should not be precluded from seeking the death penalty. If appellate counsel had raised this issue on appeal, we would not have reversed the trial court’s finding unless defendant had demonstrated that the trial court’s findings were against the manifest weight of the evidence. See 
People v. Brown
, 169 Ill. 2d 132, 144 (1996).

Had we reviewed this issue on direct appeal, we would likely not have found that the trial court’s finding was against the manifest weight of the evidence. Even if the evidence is viewed in the light most favorable to defendant, the best that can be said is that the agreement was that, if defendant was not the shooter and if he told the truth, the State would not seek the death penalty. Here, however, the evidence reveals that defendant was the shooter and that the statements he made to the State were not truthful. Consequently, no reasonable probability exists that, had this issue been raised on direct appeal, we would have found that the trial court’s finding was against the manifest weight of the evidence. Because defendant has failed to demonstrate that he was prejudiced by appellate counsel’s failure to raise this issue, defendant’s argument must fail.

Arbitrary and Capricious Deadline

Defendant next contends that the trial court violated his right to due process by arbitrarily and capriciously imposing a deadline for filing an amended petition and for refusing to appoint an expert to evaluate defendant. Defendant’s argument is nothing more than an alternative repetition of his first argument. Essentially defendant is asserting that the deadline for filing his amended petition was arbitrary and capricious because it had to be filed without defendant’s attorneys having the benefit of a neuropsychiatrist examining defendant.

Defendant does not argue that the lack of time prevented him from presenting an adequate petition. Rather, he asserts that the trial court’s refusal to appoint funds for an expert and to grant him additional time to obtain the expert’s opinion prevented him from presenting an adequate petition. Because we have concluded that the trial court did not abuse its discretion in failing to appropriate funds to hire an expert, we must also conclude that the trial court did not abuse its discretion when it refused to extend the deadline for filing defendant’s amended petition.

Uniform Test for the Appointment of Experts

Defendant’s final argument is that this court should adopt a uniform test to guide trial courts in deciding whether to appoint an expert for trial or post-conviction proceedings. Defendant contends that the appropriate standard is known as the “truth-seeking” theory, which requires the appointment of an expert if the expert could provide the fact finder with information that, standing alone or in combination with other information, would form the basis for a reasonable doubt. See D. Harris, 
The Constitution and Truth Seeking: A New Theory on Expert Services for Indigent Defendants
, 83 J. Crim. L. & Criminology 469, 492 (1992). This approach requires the trial court to ask two questions: (1) is the issue in dispute; and (2) would the expert bring helpful information to the fact finder. 83 J. Crim. L. & Criminology at 492-93.

Defendant does not explain how this test is either different in application from or superior to the test we established in 
Hall
. In 
Hall
 we explained that an expert should be appointed if the testimony would assist the court in deciding the question before it. 
Hall
, 157 Ill. 2d at 339-40. If defendant can demonstrate that the expert testimony is relevant and material to the trial court’s consideration of his post-conviction petition and if the court believes that the expert’s opinion would be of assistance in deciding the issues before the court, then the trial court should appoint the expert. If these conditions are not met, then the trial court does not abuse its discretion by failing to appoint the expert. Additionally, we question defendant’s concerns relating to uniformity. The test we established in 
Hall
 for post-conviction purposes is the same test that is used in determining whether the trial court should appoint an expert for trial purposes. See 
Hall
, 157 Ill. 2d at 339-40; 
People v. Mack
, 128 Ill. 2d 231, 250 (1989).

Without some explanation by defendant as to why the test he proposes is different from and, more importantly, superior to the test we adopted in 
Hall
, we must decline defendant’s invitation to adopt a new test.

CONCLUSION

After reviewing defendant’s petition, we conclude that the circuit court of McLean County did not err in denying defendant’s motion for the appropriation of funds to hire an expert and in dismissing defendant’s post-conviction petition. Therefore, the judgment of the circuit court is affirmed.

The clerk of this court is directed to enter an order setting Wednesday, November 29, 2000, as the date on which the sentence of death entered by the circuit court shall be implemented. Defendant shall be executed in the manner provided by law (725 ILCS 5/119–5 (West 1998)). A certified copy of the mandate of this court shall be transmitted by the clerk of this court to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution wherein defendant is confined.

Affirmed.

JUSTICE McMORROW, dissenting:

In this appeal, defendant Glenn Wilson asks the court to reverse the circuit court’s order dismissing defendant’s amended post-conviction petition. As finally revised by court-appointed counsel, defendant’s petition asserts that his trial counsel neglected to investigate evidence of defendant’s mental and neurological deficiencies, and failed to present expert testimony concerning these deficiencies at trial and during defendant’s sentencing hearing. Defendant additionally claims that he received ineffective assistance of appellate counsel. Defendant maintains that his attorneys’ neglect violated defendant’s sixth amendment right to effective assistance of counsel. Defendant asserts that he made a “substantial showing” of these alleged constitutional violations and, therefore, that the trial court erred by dismissing his amended petition without conducting an evidentiary hearing.

Defendant also argues that the circuit court abused its discretion by refusing to appropriate funds for defendant to obtain additional expert analysis of his post-conviction claims. Finally, defendant insists that the circuit court erred by refusing to extend the deadline for the filing of defendant’s amended post-conviction petition, as well as the circuit court’s denial of the motions for funding and for extensions of time.

The majority affirmed the circuit court’s dismissal of defendant’s amended petition without an evidentiary hearing. I disagree with the majority’s disposition of two issues presented for review. I believe that defendant made a substantial showing of ineffective assistance of trial counsel. Trial counsel’s failure to present mitigating evidence, at defendant’s sentencing hearing, of defendant’s mental disabilities denied defendant his constitutional right to effective representation. Defendant has made the necessary showing to qualify for an evidentiary hearing on his post-conviction petition. I also conclude that the trial court abused its discretion by denying defendant’s request for additional funds. Accordingly, I dissent.

At this stage of the post-conviction proceedings, this court’s inquiry is narrowly focused. Our limited mission is to determine whether defendant is entitled to an evidentiary hearing on allegations raised in the post-conviction petition. 
People v. Coleman
, 183 Ill. 2d 366, 381 (1998). In deciding whether defendant deserves an evidentiary hearing, the court accepts as true all well-pleaded facts in defendant’s petition and any attached affidavits (
People v. Morgan
, 187 Ill. 2d 500, 528 (1999)), and determines whether defendant has made a substantial showing of a deprivation of a constitutional right at trial (
Coleman
, 183 Ill. 2d at 381). Defendant makes a “substantial showing” when the allegations in the petition are supported by the trial record or by affidavits accompanying the petition. 
Morgan
, 187 Ill. 2d at 528;
 
Coleman
, 183 Ill. 2d at 381; 
People v. Erickson
, 161 Ill. 2d 82, 108 (1994) (McMorrow, J., dissenting) (“The proper question is whether the defendant’s allegations, when viewed in the light most favorable to the defendant, are sufficient to demonstrate that the defendant should receive an evidentiary hearing to prove his allegations”).

Defendant alleges in his petition that he suffers from a rage disorder which causes him to respond to excitement with uncontrollable anger. Defendant attached to his post-conviction petition the affidavits of psychologist Harry Gunn and neuropsychologist Jonathan Hess. Both Hess and Gunn examined defendant. They found that defendant had a history of violent, explosive behavior. Hess described defendant as subject to “episodic discontrol, or rage attacks.” The nature of this rage, which is triggered when defendant becomes “excited,” “is well beyond anything a person without episodic discontrol could imagine. A person in such a rage attack would be unable to control his behavior or to conform his behavior to the requirements of the law.” Hess hypothesized that defendant’s rage attacks were the product of defendant’s epilepsy, or other physical brain damage caused by numerous injuries to the head that defendant sustained since childhood.

Defendant argues that evidence of the rage disorder, and its likely organic origins in defendant’s brain, was available to defendant’s trial attorney before and during the trial of this case. Defendant argues that had trial counsel retained an expert to analyze defendant and his medical history, trial counsel could have introduced evidence at sentencing that defendant committed the murders while “under the influence of extreme mental or emotional disturbance” (720 ILCS 5/9–1(c)(2) (West 1998)), and thus defendant would have received a sentence of life imprisonment instead of a death sentence. Defendant concludes that his lawyer’s failure to investigate this defense, and failure to present evidence of the rage disorder at the sentencing hearing, deprived defendant of his sixth amendment right to counsel. U.S. Const. amend. VI; 
Cuyler v. Sullivan
, 446 U.S. 335, 344, 64 L. Ed. 2d 333, 343-44, 100 S. Ct. 1708, 1716 (1980).

As the majority notes, legal representation fails to satisfy the sixth amendment when the representation falls below an objective standard of reasonableness and when defendant can show a reasonable probability that, but for the counsel’s alleged errors, the result of the sentencing proceeding would have been different. 
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); 
Morgan
, 187 Ill. 2d at 548. Further, in light of the extreme importance of mitigation evidence at a capital sentencing hearing, courts require defense counsel to make a reasonable investigation to uncover mitigating facts, or at least articulate a plausible reason for the failure to conduct such an investigation. 
Morgan
, 187 Ill. 2d at 541; 
People v. Perez
, 148 Ill. 2d 168, 187-91 (1992).

If, as it must, the majority viewed the allegations of the amended petition in a light most favorable to defendant, it would have to conclude that trial counsel’s representation fell below the reasonableness standard. Evidence of defendant’s emotional and neurological disorders was readily available to defendant’s trial attorney before defendant’s sentencing hearing, but never adequately investigated.

Prior to sentencing, defendant retained Douglas Crossman, a mitigation expert, to gather evidence in support of mitigation. The written mitigation report prepared by Crossman included copies of psychological and medical examinations performed on defendant as an adolescent and as an adult. Collectively, these documents contained several references to epilepsy, and repeated episodes of unusually violent behavior. An interview with defendant’s mother revealed, for example, that he had suffered from “seizures” from childhood. An examination in 1974 stated that defendant was subject to “spells,” and other records from 1976 noted the fact that defendant suffered from temporal lobe epilepsy. In 1989, a social worker interviewing defendant after a suicide attempt indicated that defendant had ceased taking his dilantin. Dilantin is prescribed to treat epilepsy. EEG’s conducted in 1974 showed abnormalities, albeit mild ones, in defendant’s brain function.

Concerning defendant’s conduct, these records also noted defendant’s “uncontrolled behavior” and spells of “tearing up the furniture” and “fighting.” One psychologist noted defendant’s “long history of violence and total lack of self control,” which the psychologist also described as an “explosive personality.”

Crossman gathered these records and reviewed them for the defense in preparation for the capital sentencing hearing. Defendant’s trial attorney examined Crossman as one of only two witnesses presented by the defense at the aggravation/mitigation stage of the hearing, and the trial court admitted the mitigation report into evidence. The theory behind defense counsel’s examination of Crossman at trial seemed to be that “society” failed to give defendant the psychiatric aid a troubled person like defendant needed. However, counsel never used the information, readily available in the report, to suggest that defendant acted under an extreme mental or emotional disturbance when the murders were committed in this case. Further, the mere fact that the trial court had defendant’s medical records before it was not the equivalent of expert testimony regarding defendant’s neurologically based personality disorder. The medical records furnished only the symptoms and possible causes of the behavior. The onus remained on trial counsel, however, to pursue the evidence regarding defendant’s behavior provided by the records and to obtain an expert opinion regarding the significance of the medical evidence. Counsel’s failure to investigate the medical defense suggested by the mitigation report deprived defendant of valuable mitigation evidence.

At this stage of the post-conviction proceedings, moreover, we do not interpret the attorney’s strategy at sentencing as a reasonable exercise of professional judgment. Although a trial lawyer may reasonably decide not to introduce mitigating evidence after thoroughly investigating that evidence (
People v. Ruiz
, 177 Ill. 2d 368, 385 (1997)), the record in this appeal shows that the trial attorney never made a preliminary investigation into the nature of defendant’s neurological disorders. To have never attempted the investigation is, according to prior decisions of this court, a serious lapse in trial counsel’s professional obligations. 
Perez
, 148 Ill. 2d at 187-91. The evidence of defendant’s “discontrol” and the fact he suffered neurological infirmities–most likely epilepsy–was literally handed to counsel in the form of the mitigation report. It would have required little effort on counsel’s part to retain, or seek funds from the court to retain, a medical expert to decipher the significance of the information in defendant’s records and determine whether the bursts of anger exhibited by defendant had any organic origin. Counsel’s inactivity in this regard evidences a breach of his duty to investigate and present a mitigation defense. 
Ruiz
, 177 Ill. 2d at 385.

Additionally, the facts of record yield a “substantial showing” of a violation of the second prong of the 
Strickland
 test. Had trial counsel presented expert evidence of defendant’s rage disorder, a reasonable probability exists that the trial judge would have concluded that the balance of aggravating and mitigating circumstances did not warrant imposition of the death sentence. 
Morgan
, 187 Ill. 2d at 548. Expert evidence of defendant’s neurologically based difficulties would have significantly affected both the amount and nature of the mitigation evidence presented on defendant’s behalf. At the conclusion of the aggravation/mitigation hearing, the trial judge addressed the aggravating and mitigating factors adduced during the sentencing hearing. The judge’s summary of the aggravating evidence covers 6½ pages of trial transcript. The judge’s remarks concerning the mitigation evidence was limited to one sentence: “As I have reviewed this evidence, I find almost no mitigating evidence.” Indeed, defendant presented only two witnesses, Douglas Crossman, the mitigation expert, and Willie May Bryson, defendant’s mother. Bryson’s brief testimony was tailored to show that defendant was one of many children, and that he grew up in a family without the consistent presence of a father-figure. Her testimony was also apparently intended to support Crossman’s statements that, although defendant needed psychiatric care from a very early age, he did not receive it.

 While I am aware that proof of a psychological problem in defendant does not automatically preclude imposition of the death penalty (
People v. Wilson
, 164 Ill. 2d 436, 460 (1994)), evidence of defendant’s rage disorder is directly probative of defendant’s mental state at the time he committed the murders in question, as well as other crimes introduced in aggravation. Proof that defendant would predictably lose control of his behavior in certain situations undermines the suggestion that defendant’s criminal acts were the product of deliberate, preconceived plans. It would also place defendant in a far more sympathetic light before the trier of fact. In previous decisions, this court has conceded that evidence of psychological and emotional disturbances figures prominently in the decision of whether to impose the death penalty. See 
Morgan
, 187 Ill. 2d at 552; 
Perez
, 148 Ill. 2d at 194-95; 
Ruiz
, 177 Ill. 2d at 387.

I do not agree with the majority’s assessment that defendant failed to show he committed the murders “under the influence of a ‘rage attack.’ ” Slip op. at 7. I believe that the majority dismisses too easily defendant’s statements to the police that the shootings were “a spur of the moment thing” that “weren’t supposed to happen.” The very essence of Hess’ assessment of defendant is that, when in an excitable situation, defendant will lose control of himself in a manner not comprehensible to people who do not share the same condition. A reasonable inference may be drawn that the robbery constituted an instance of excitement that could have triggered a rage attack and prompted an action that, in defendant’s words, “[was not] supposed to happen.”

Moreover, the majority’s contention that defendant did not suffer a “rage attack” at the time of the murder ignores this court’s obligation to accept defendant’s factual assertions as true. He alleges, with affidavits in support, both an incident that was, by its nature, charged with excitement, and how his behavior is transformed by such an event. These allegations are more than adequate to satisfy the requirements established by this court to earn an evidentiary hearing. In sum, defendant has made a substantial showing that he was deprived of his sixth amendment right to counsel. On this basis, the judgment of the circuit court should be reversed, and the cause remanded for an evidentiary hearing on defendant’s amended post-conviction petition.

Finally, the necessity of an evidentiary hearing on defendant’s post-conviction petition requires this court to reexamine defendant’s request for additional funding for medical expert witnesses and medical tests. Specifically, defendant sought additional funding from the trial court so that defendant could obtain an ambulatory EEG and an examination by a neuropsychiatrist or a behavioral neurologist. Dr. Hess recommended the test and exam in his affidavit attached to defendant’s amended post-conviction petition.

Defendant cannot claim a constitutional right to investigative resources for his attorney, because defendant has no constitutional right to appointed counsel at the post-conviction stage. 
People v. Richardson
, No. 83579 (February 17, 2000), slip op. at 14-15. “Where no constitutional right is implicated, the decision to appoint an expert, or to authorize funds to hire an expert, rests within the sound discretion of the circuit court.” 
Richardson
, slip op. at 15.  Whether the trial court should have funded an additional medical work-up depends primarily on whether the trial court concludes that the proposed tests and exams would be of assistance to the court. 
People v. Hall
, 157 Ill. 2d 324, 339-40 (1993).

In the present case, the trial court’s failure to grant defendant’s request for funds constituted an abuse of discretion. I have already described how the expert opinions tendered at the post-conviction stage illuminated the failings in defendant’s legal representation during the capital sentencing hearing. According to these same experts, the additional medical procedures would solidify the experts’ opinions. The requested funds would yield evidence directly relevant to the issue of counsel’s competence at the capital sentencing stage. Therefore, on remand, I would order the trial court to fund the supplementary tests and exams recommended by Dr. Hess.

CHIEF JUSTICE HARRISON and JUSTICE FREEMAN join in this dissent.