Docket No. 86775–Agenda 2–September 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID SMITH, Appellant.

Opinion filed December 1, 2000.

JUSTICE McMORROW delivered the opinion of the court:

Defendant, David Smith, appeals from an order of the circuit court of Cook County dismissing his amended petition for post-conviction relief without an evidentiary hearing. Because defendant was sentenced to death for the underlying convictions, his appeal lies directly to this court. 134 Ill. 2d R. 651(a). For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

This court has previously set forth the evidence presented at defendant’s trial in our opinion on defendant’s first direct appeal. See 
People v. Smith
, 152 Ill. 2d 229 (1992). Therefore, we discuss only those facts and evidence necessary to the disposition of this appeal. Defendant’s convictions arise from the murder of Lisa Ferguson. On the evening of March 17, 1987, defendant entered the home where the victim was staying, and beat, strangled and stabbed her multiple times, while her four-year-old cousin hid in a bedroom. In addition, defendant sexually penetrated the victim’s anus. Defendant was subsequently arrested and provided a statement in which he admitted killing the victim. A jury found defendant guilty of first degree murder, aggravated criminal sexual assault, and home invasion. At a separate sentencing hearing, the same jury found defendant eligible for the death penalty, and further found that there were no mitigating factors sufficient to preclude the imposition of the death penalty. Defendant was sentenced to death.

On direct appeal, this court affirmed defendant’s convictions, but vacated defendant’s sentence and remanded the cause for a new sentencing hearing, due to the circuit court’s failure to “life-qualify” the jury, pursuant to 
Morgan v. Illinois
, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992). 
Smith
, 152 Ill. 2d at 274. On remand, defendant waived a jury for sentencing and the same judge that presided over defendant’s trial again imposed the death penalty for defendant’s murder conviction. This court affirmed defendant’s death sentence. 
People v. Smith
, 176 Ill. 2d 217, 261 (1997). On December 21, 1995, defendant filed a 
pro se
 petition for post-conviction relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122–1 
et seq.
 (West 1998)). Thereafter, on December 6, 1997, defendant filed an amended petition for post-conviction relief. After hearing arguments, the circuit court denied defendant’s petition without an evidentiary hearing.

ANALYSIS

The Post-Conviction Hearing Act provides a remedy to criminal defendants who claim that substantial violations of their federal or state constitutional rights occurred in their original trial or sentencing hearing. 
People v. Towns
, 182 Ill. 2d 491, 502 (1998). An action for post-conviction relief is not an appeal from the underlying judgment, but rather a collateral proceeding. 
Towns
, 182 Ill. 2d at 502. A post-conviction proceeding allows inquiry into constitutional issues involved in the conviction and sentence that have not been, and could not have been, adjudicated previously on direct appeal. 
Towns
, 182 Ill. 2d at 502.

A defendant is not entitled to an evidentiary hearing on a post-conviction petition as a matter of right. 
People v. Hobley
, 182 Ill. 2d 404, 427-28 (1998). Rather, an evidentiary hearing is warranted only where the allegations of the post-conviction petition, supported where appropriate by the trial record or accompanying affidavits, make a substantial showing that the defendant’s constitutional rights have been violated. 
Hobley
, 182 Ill. 2d at 428. In determining whether to grant an evidentiary hearing, all well-pled facts in the petition and any accompanying affidavits are taken as true. 
Towns
, 182 Ill. 2d at 503. A trial court’s dismissal of a post-conviction petition without an evidentiary hearing is reviewed 
de novo.
 
People v. Coleman
, 183 Ill. 2d 366, 389 (1998).

I. Timeliness of Post-Conviction Petition

The State contends in its brief that defendant did not file his petition within the time limitations prescribed by the Post-Conviction Hearing Act (725 ILCS 5/122–1
 et seq.
 (West 1998)). At oral arguments, however, the State conceded that defendant did, in fact, file his petition in a timely manner. Therefore, we do not address this issue.

II. Ineffective Assistance of Counsel

Defendant raises a series of challenges to his trial counsel’s performance. A defendant is guaranteed the effective assistance of counsel at trial and at a death sentencing hearing. 
Strickland v. Washington
, 466 U.S. 668, 686-87, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2063-64 (1984). To establish a claim of ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice. 
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

In order to satisfy the deficient-performance prong of 
Strickland
, a defendant must show that his counsel’s performance was so inadequate that counsel was not functioning as the “counsel” guaranteed by the sixth amendment. Counsel’s performance is measured by an objective standard of competence under prevailing professional norms. Further, in order to establish deficient performance, the defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy. 
People v. Evans
, 186 Ill. 2d 83, 93 (1999); 
People v. Griffin
, 178 Ill. 2d 65, 73-74 (1997). Matters of trial strategy are generally immune from claims of ineffective assistance of counsel. 
People v. West
, 187 Ill. 2d 418, 432 (1999).

In order to establish prejudice, a defendant must prove that there is a reasonable probability that, but for counsel’s deficient performance, the outcome of the proceeding would have been different. 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. A reasonable probability is defined as a probability that is sufficient to undermine confidence in the outcome. Thus, the defendant must show that counsel’s deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. 
Evans
, 186 Ill. 2d at 93; 
Griffin
, 178 Ill. 2d at 74. A defendant must satisfy both prongs of the 
Strickland
 test. 
People v. Mahaffey
, No. 85215, slip op. at 15 (October 13, 2000). If a defendant cannot establish that he suffered prejudice, a court need not determine whether counsel’s performance was constitutionally deficient. 
Griffin
, 178 Ill. 2d at 74.

A. Pretrial Errors

Defendant maintains that his counsel was ineffective in presenting his motion to suppress a statement that defendant gave at police headquarters on the night of March 17, 1987, in which he confessed to the murder of Lisa Ferguson.

Defendant contends that his counsel failed to introduce corroborating testimony relating to the claim that his confession was coerced. Prior to trial, defense counsel moved to suppress defendant’s statement, arguing that it was coerced. In support of this motion, defense counsel offered testimony from Josephine Palomino, defendant’s girlfriend. She stated:

“I heard David Smith [at the police station]. He was yelling, screaming. He was swearing, telling the police officers–well, I would take it for granted it was the police officers–to leave him alone, not to touch him, to get away from him, and he was calling for me. I want to talk to Josie. I want to talk to Josie. I want to see Josie.”

In denying the motion, the trial judge stated:

“There is absolutely no evidence indicating that there was any physical abuse in this case, and I think that the pictures [of defendant] bear this out, that there was no physical abuse seen in those photographs. *** Assuming arguendo that there were loud voices raised *** the Petitioner does not by this type of testimony meet his burden indicating that *** the statement was not freely and voluntarily given.

Where a defendant has made a statement and later has had an opportunity to reflect on that statement and consult with his advisors, be they attorneys or other people he comes into contact with, he shortly realizes that his mere denial is not going to be enough. He must show something else.

Well, I don’t think that there is any evidence in this case that the statement was other than free and voluntary.”

Defendant now argues that the trial judge’s decision would have been different had defense counsel offered additional evidence from Rose Palomino, Josephine Palomino’s mother. At trial, Rose Palomino testified: “I heard [defendant] yelling for Josie, calling her name, let me see Josie, let me see Josie, and he said, get your ‘F’ing hands off of me.”

This argument is waived. Rose Palomino’s testimony was part of the record on direct appeal. Accordingly, this claim could have been raised at that time. See 
Towns
, 182 Ill. 2d at 502-03 (issues that could have been presented on direct appeal but were not, are waived). However, defendant contends that his appellate counsel was ineffective for failing to raise this issue on direct appeal.

Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel. 
West
, 187 Ill. 2d at 435. “A defendant who contends that appellate counsel rendered ineffective assistance, 
e.g.
, by failing to argue an issue, must show that the failure to raise that issue was objectively unreasonable and that the decision prejudiced the defendant. Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel’s appraisal of the merits is patently wrong. Accordingly, unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel’s failure to raise them on appeal. 
People v. Childress
, 191 Ill. 2d 168, 175 (2000); 
People v. West
, 187 Ill. 2d 418, 435 (1999) (and cases cited therein).” 
People v. Easley
, 192 Ill. 2d 307, 328-29 (2000).

In examining the claim on the merits, however, we find that defendant’s argument fails. The trial judge was clear in his finding that, even assuming that there were “loud voices raised,” such evidence did not satisfy defendant’s burden of proof to show that his statement was not freely and voluntarily given. Rose Palomino’s testimony does not significantly differ from Josephine Palomino’s testimony and is merely cumulative. Thus, based on the trial judge’s statements, we do not believe that this additional testimony by Rose Palomino would have convinced the trial judge that defendant met his burden in showing that his statement was not voluntary. There was no reasonable probability that the outcome of defendant’s motion to suppress would have been different. Defendant has therefore failed to establish that he suffered prejudice as required by 
Strickland
, and his ineffective assistance of counsel claim fails.

With regard to the same suppression hearing, defendant next argues that his trial counsel was ineffective for failing to present testimony that defendant was under the influence of phencyclidine (PCP) at the time he gave his statement, and that counsel failed to present expert testimony relating to the effects of PCP. To support the argument that he was, in fact, under the influence of PCP when he made his statement at the police station, defendant attaches the affidavits of two friends who were with defendant on the day of the murder, Efren Ramirez and Manuel Ramirez. In addition, defendant attaches an affidavit from Dr. Bruce Perry discussing how use of PCP could have affected defendant’s ability to make a free and voluntary statement.

The affidavits on which defendant relies to support the argument that he was under the influence of PCP are insufficient to make a substantial showing that his right to effective assistance of counsel has been violated. In these affidavits, defendant’s friends stated that, on the day of the murder, they drank alcohol and smoked marijuana with defendant. Manuel Ramirez stated that “Eddie had mentioned” that PCP was present in the marijuana. Edward Ramirez stated that “there was PCP in the pot, you could taste it. I can tell the difference blindfolded.” Thus, evidence of defendant’s alleged PCP inhalation boils down to Edward Ramirez’s contention that defendant inhaled PCP because Edward “can tell the difference [between marijuana and PCP] blindfolded.” We reject defendant’s claim that these affidavits “clearly prove” that defendant had ingested PCP at the time of the murder. To the contrary, we find that the statement that Edward Ramirez “can tell the difference blindfolded” is speculative and insufficient to establish that defendant was under the influence of PCP. Thus, even if defendant’s counsel would have presented the testimony of these two friends of defendant, we do not believe the result of suppression hearing would have differed. Defendant has not established that he suffered prejudice from his counsel’s failure to present the testimony of Efren Ramirez and Manuel Ramirez. Therefore, defendant did not receive ineffective assistance of counsel.

 Defendant next claims that his counsel was ineffective for failing to present any evidence in support of a motion counsel filed to suppress additional statements made by defendant at his apartment. At the suppression hearing on this motion, Officer Daniel Simon and Detectives John McCann and John Koclanis testified that, after leaving the crime scene on March 17, 1987, they proceeded to defendant’s apartment as part of their homicide investigation. When they arrived at defendant’s building, Officer Simon and his partner walked through a gangway and heard an argument between a woman, later identified as Josephine Palomino, and a man, later identified as defendant. They went through a door at the rear of the building which led into a vestibule area. At that time, the officers heard the following conversation:

“Female: ‘Where have you been tonight?’

Male: ‘I have been out.’

Female: ‘Where have you been tonight?’

Male: ‘I saw someone get killed tonight.’

Female: ‘Your clothes are all full of blood, are all full of blood. You had something to do with it.’

Male: ‘I did it.’ ”

On defendant’s first direct appeal, he argued that these statements should have been suppressed because the officers violated the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution when they listened to this conversation outside of defendant’s apartment door. We held that no fourth amendment “search” occurred because defendant did not have a reasonable expectation of privacy in his conversation. 
Smith
, 152 Ill. 2d at 245. We found that: (1) the area where the officers overhead the conversation was a common area; (2) the area where the officers where standing when they overhead the conversation was unlocked; (3) defendant’s voice was raised; and (4) the officers used no artificial means to enhance their ability to hear, nor did they enter an area where they had no legal right to be. 
Smith
, 152 Ill. 2d at 245-46.

Defendant now claims that his counsel should have introduced testimony from Josephine Palomino at the suppression hearing. In support of this claim, defendant has attached an affidavit from Josephine Palomino to his post-conviction petition, in which she states that defendant never said “I did it.” Palomino also states that the apartment door was “always locked.” Defendant now argues that had this testimony been introduced at the suppression hearing, the statement made at the apartment would have been suppressed.

We find that, even if defendant’s statement “I did it” was suppressed, there is no reasonable probability that the outcome of defendant’s trial would have been different. Defendant made another statement at the police station confessing to the murder of Lisa Ferguson which included more detail than the mere statement “I did it.” That statement was written by an assistant State’s Attorney, signed by defendant and introduced at trial. As we noted in our opinion on defendant’s direct appeal, the evidence against defendant was overwhelming. See 
Smith
, 152 Ill. 2d at 269. In light of the fact that this was not a closely balanced case, we conclude that there is no reasonable probability that the outcome of defendant’s trial would have been different had the challenged statement never been admitted. Therefore, we find that defendant suffered no prejudice as a result of the claimed error. 
Mahaffey
, slip op. at 19.

B. Trial Errors

a. 
Intoxication Defense

Defendant next contends that his trial counsel failed to adequately investigate and present evidence that would have supported an intoxication defense at trial. Defendant claims that had trial counsel presented testimony as to defendant’s drugged and intoxicated condition on the night of the murder, he would have had a basis for an affirmative defense of voluntary intoxication or a jury instruction on involuntary manslaughter. According to defendant, “testimony regarding [defendant’s] drug and alcohol ingestion would have established the defense of voluntary intoxication and would have reduced [defendant’s] legal culpability for the alleged crime.”

In support of this argument, defendant offers the affidavits of Efren Ramirez and Manuel Ramirez, as well as an affidavit from Edward Ramirez. As we have discussed previously in this opinion, the affidavits of Edward and Manuel Ramirez are insufficient to establish that defendant was under the influence of PCP at the time of the murder. Moreover, while Edward Ramirez’s affidavit states that he and defendant smoked marijuana on the day of the murder, it does not mention anything about PCP. Thus, we do not agree with defendant’s claim that the evidence contained in these three affidavits “establish” that defendant was under the influence of marijuana and PCP. Rather, we find that the evidence that defendant was under the influence of PCP is speculative and inconclusive.

Moreover, even if defendant had conclusively established that he had taken PCP on the day of the murder, the evidence would have been insufficient to support an affirmative defense of voluntary intoxication. In 
People v. Jackson
, 145 Ill. 2d 43 (1991), 
rev’d & rem’d
, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992), the defendant claimed that he used cocaine and heroin on the night that he committed several murders, and that he used PCP, marijuana and heroin the following day. 
Jackson
, 145 Ill. 2d at 71. A defense expert testified to the effects of the drugs. On appeal, this court held that it did not believe that any rational jury would have found the defendant’s attempt to raise an intoxication defense credible. 
Jackson
, 145 Ill. 2d at 86. We found that the defendant was presumed to intend the natural and probable consequence of his acts and that such a presumption was supported by the defendant’s written and oral statements in which he stated his intent to kill the victim. 
Jackson
, 145 Ill. 2d at 87. We also noted that the detail of defendant’s recall in his statements to the police showed that he was acutely aware of his surroundings. Finally, we found that those who observed defendant on the night of the crimes stated that he appeared to have no difficulty speaking or walking. Thus, we held that the jury would not have believed that the defendant was not capable of acting intentionally. 
Jackson
, 145 Ill. 2d at 87.

Similarly, in this case, even if the jury believed that defendant had used PCP on the day of the murder, we cannot conclude that the jury would have found that defendant did not intend to cause the death of the victim. In his statement to the police, defendant stated that he initially went to the apartment where the victim was staying to steal a VCR. When he learned that the victim was home, he left. Defendant stated that he then “walked around for a while *** then decided to go back to the apartment,” and that “he didn’t know why he went back up to the apartment except that he must have intended to kill [the victim].” Defendant was able to recall the events of the murder when giving his statement.

Further, those who were with defendant on the night of the murder stated that he did not appear overly intoxicated. Max Ferguson, the victim’s brother, testified that he saw defendant at Bucko’s tavern on the evening of the murder and he did not see him slurring his speech, swaggering or stumbling, but that he only noticed that defendant was “being loud.” Carlos Moya testified that on the evening of the murder, although defendant appeared to be “under the influence” of alcohol because his words were not completely clear, he did not appear to be intoxicated. Juanita Soto testified that defendant was at a bar before the murder and that defendant was “feeling good,” “somewhat intoxicated,” and that “you could say” that he was slurring his words, but that he was not stumbling or swaying. Officer Simon, one of the patrol officers who assisted in the homicide investigation, testified that around10 p.m. on the night of the murder, defendant did not appear intoxicated, but rather “seemed normal in every respect. There was no slurred speech, no bloodshot eyes *** no staggering or stumbling” and no smell of alcohol. Officer Simon stated that defendant did not appear to be under the influence of any drugs. Finally, the assistant State’s Attorney who took and drafted defendant’s statement on the night of the murder wrote that defendant appeared to be free from the effects of alcohol and drugs and testified that, while he did not specifically ask defendant, “there was no overt notice” that defendant was under the influence.

Defendant relies on 
People v. Wright
, 111 Ill. 2d 18 (1986). 
Wright
, however, is inapposite to the case at bar. In 
Wright
, evidence existed to show that the defendant was not guilty of murder, of which she was convicted, but rather of involuntary manslaughter due to her intoxication at the time that she shot and killed her daughter. 
Wright
, 111 Ill. 2d at 29. At the evidentiary hearing on defendant’s petition for post-conviction relief, defendant’s attorney testified that he did not raise the defense of intoxication because he thought that “the defense of drunkenness *** is that you have to be drunk to the extent that you have no recall of the facts.” We found that this was a misapprehension of the law and was not the result of trial tactics or strategy. 
Wright
, 111 Ill. 2d at 27. Moreover, at the evidentiary hearing on defendant’s post-conviction petition, the trial judge stated that “ ‘the outcome would have been different, and I can say with a certainty because I heard the case, the outcome would have been different had I heard the evidence that I heard today. I would have rendered a judgment of guilty of involuntary manslaughter.’ ” 
Wright
, 111 Ill. 2d at 31. We determined that this was a “classic demonstration” that, but for counsel’s deficient performance, the result of the trial would have been different. 
Wright
, 111 Ill. 2d at 31.

Unlike 
Wright
, nothing in the case at bar suggests that defendant’s counsel misunderstood the law regarding voluntary intoxication. There was simply not enough evidence to support a defense of voluntary intoxication. Any evidence with regard to defendant’s intoxication is speculative and inconclusive. In fact, the majority of the evidence tends to show that defendant was not intoxicated when he committed the murder. Therefore, we do not find 
Wright
 to be pertinent to the case at bar.

In light of all of the evidence, we believe that, as in 
Jackson
, evidence of defendant’s intent is apparent. Defendant has not established that he suffered prejudice from his counsel’s failure to present evidence in support of a voluntary intoxication defense, as required by 
Strickland
. Even if defendant’s counsel had offered the evidence that defendant seeks, we cannot conclude that there is a reasonable probability that the result of the proceeding would have been different.

b. 
Insanity Defense

In a related argument, defendant claims that counsel was ineffective for failing to present an insanity defense. In support of this contention, defendant attaches an affidavit from Dr. Bruce Perry, a psychiatrist with a degree in neuropharmacology, which states that, in his opinion, defendant “was intoxicated with drugs (especially PCP); he was responding to internal processes without adequate ties to reality. In essence he was operating under a condition of extreme mental disturbance,” and that his judgment was “severely impaired” at the time of the murder. Defendant argues that this affidavit, in combination with the evidence that defense counsel presented at the resentencing hearing, supports the contention that his counsel should have requested a bifurcated trial and presented an insanity defense along with the defense theory presented at trial.

At defendant’s resentencing hearing, Dr. George Savarese, a licensed clinical social worker who completed a comprehensive psycho-social developmental history of defendant, testified that, based on two interviews with defendant and review of interviews with his family and friends, he concluded that defendant had a “borderline personality disorder.” Savarese further testified that it was “very feasible that [defendant] could have slipped into [a] transient psychotic state” during the murder. In describing what a “transient psychotic state” is, Savarese stated:

“an individual can decomponsate into a psychotic state *** they’re on a continuum from obviously normal to actually insane, and most individuals fall somewhere in the middle probably *** although borderline is not psychotic, particularly in and of itself, [an individual with borderline personality disorder] can slip into a psychotic state where they’re completed detached at least for a limited amount of time from reality.”

This evidence does not constitute a substantial insanity defense. The Criminal Code of 1961 states that “[a] person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct.” 720 ILCS 5/6–2(a) (West 1998). Though the State must prove beyond a reasonable doubt each element of the offense charged, “the burden of proof is on the defendant to prove by clear and convincing evidence that the defendant is not guilty by reason of insanity.” 720 ILCS 5/6–2(e) (West 1998).

In 
People v. Wilson
, 191 Ill. 2d 363 (2000), the defendant claimed that his counsel was ineffective for failing to investigate and present an insanity defense. Evidence suggested that defendant suffered from epilepsy, was probably mildly retarded and may have been suffering form an extreme mental or emotional disturbance at the time of the murder. We held that the sum of this evidence would not have placed a reasonable attorney on notice that an insanity defense was viable because “nothing in defendant’s records provides any indication that his mental problems would meet the definition of legal insanity.” 
Wilson
, 191 Ill. 2d at 372.

As in 
Wilson
, we find that defendant’s “borderline personality disorder” does not rise to the level of insanity. In order to enter the apartment where the victim was staying, defendant pretended to be the victim’s brother. After committing the murder, defendant went to his apartment and tried to wash the blood out of his clothes. Clearly, this is a person who appreciated the criminality of his conduct. Therefore, we find that defendant’s counsel was not ineffective for failing to present an insanity defense.

c. 
Prosecution Closing Argument

Next, defendant contends that his trial counsel was ineffective for failing to object to a portion of the State’s closing argument during defendant’s trial. Though this argument is waived due to defendant’s failure to raise it on direct appeal, defendant avoids the waiver rule by arguing that his appellate counsel was ineffective for raising the issue on appeal. See 
People v. Whitehead
, 169 Ill. 2d 355, 371-72 (1996).

After the murder, the victim was found lying face down on the kitchen floor of the apartment where she was staying. Her shirt was pulled above her waist and her pants and underwear were pulled away from her body and caught around her right ankle. The victim’s naked buttocks were lying on a curling iron.

During closing argument, the prosecution stated:

“Counsel makes a big tado [
sic
] about why the curling iron was not uncovered. Well, ladies and gentlemen, I submit to you in their wildest dreams after all their years of experience, would [
sic
] never have thought this curling iron could have been used in such a horrible fashion as this Defendant used it. So that perhaps using hindsight, the curling iron has become more important than it was then, but you can insure [
sic
], ladies and gentleman, this is not an ordinary situation, this is not an ordinary way to use a curling iron.”

Defendant argues that because the State presented no evidence that “conclusively established” that defendant forcibly penetrated the victim’s anus with a curling iron, the argument was improper.

A prosecutor is given great latitude in making closing arguments. 
People v. Blue
, 189 Ill. 2d 99, 127-28 (2000). A prosecutor may comment on the evidence and all reasonable inferences stemming from the evidence. 
Blue
, 189 Ill. 2d at 127. An argument that serves no purpose other than to inflame the jury, however, is error. 
Blue
, 189 Ill. 2d at 128.

At trial, Dr. Nancy Jones, a forensic pathologist who examined the victim’s body after her death testified: “A laceration is a tear of the skin caused by separation and pulling. These were located around the circumference of [the victim’s] anus. While checking the anus, I noticed that it was gaping; that there was some bloody fluid within the opening and also that there was a tear or laceration inside the anus in the mucosa or the lining surface of the rectum.” Jones also testified that the victim’s injuries would be consistent with a forced entry of the anus by an object such as a curling iron, an object of the same shape or size as a curling iron, or a penis.

In addition, the State introduced several pictures of the victim. In those pictures, the victim is lying face down on the floor, with her shirt pulled above her waste, her jeans and underwear pulled away from her body and caught around her right ankle, and her lower torso and buttocks lying on a curling iron. Officer Sharon Gaynor, one of the first police officers to arrive at the scene, testified that she found the victim in that manner.

From the record, the statements made by the prosecutor during closing argument were a reasonable inference from the evidence. Jones testified that the victim’s injuries were consistent with forced entry of the victim’s anus by a curling iron. Further, photographs published to the jury showed the victim’s lower torso and buttocks lying on a curling iron.

Defendant’s reliance on 
People v. Linscott
, 142 Ill. 2d 22 (1991), and 
People v. McCollum
, 239 Ill. App. 3d 593 (1992), is misplaced. In 
Linscott
, the State introduced evidence that the defendant’s hairs were consistent with hairs found at the scene of the crime. The State’s witness stated that one could not determine from whose head the hair found at the crime scene came, but only that the hair was consistent with the defendant’s hair. In total, three witnesses testified that they could not conclusively identify the hairs as coming from the defendant. In closing argument, however, the prosecutor argued repeatedly that the defendant’s hair was found in the victim’s apartment and on her body. This court held that, because there was no evidence to support these statements, the prosecution’s argument was improper.

In 
People v. McCollum
, 239 Ill. App. 3d 593 (1992), the prosecutor clearly misstated the evidence adduced at trial. The prosecutor stated in closing argument that there was a “definite match” between tire marks found near the scene of the crime and the tires belonging to the defendant’s car. The testimony at trial did not establish that the tire prints “matched,” but only that they resembled each other. 
McCollum
, 239 Ill. App. 3d at 599. Moreover, the prosecutor stated that blood found on a glove in the defendant’s car belonged to the victim. The testimony at trial, however, did not establish that the blood came from the victim, but rather that the blood could have come from the victim or 40% of the general population. The prosecutor also improperly appealed to the passions of the jurors and argued the defendant’s convictions to show propensity, when those convictions were introduced at trial for the limited purpose of impeachment. 
McCollum
, 239 Ill. App. 3d at 600. The court noted that, when viewed separately, the comments would not constitute reversible error. 
McCollum
, 239 Ill. App. 3d at 597. However, the court found that the totality of the improper comments did constitute reversible error. 
McCollum
, 239 Ill. App. 3d at 597.

Unlike the situations in 
Linscott
 and 
McCollum
, the prosecutor in the case at bar did not misstate the evidence. The prosecutor argued reasonable inferences that were supported by the evidence adduced at trial. Therefore, defendant’s appellate counsel was not ineffective for failing to raise this argument on appeal.

C. Sentencing Errors

With regard to sentencing, defendant first contends that his trial counsel was ineffective for failing to investigate and present mitigation testimony at his resentencing hearing. Initially, defendant contends that his counsel failed to investigate and present evidence that defendant was under the influence of PCP on the day of the murder and evidence relating to the effects of PCP. In support of the argument that he was under the influence of PCP at the time of the murder, defendant again offers the affidavits of the three friends who were with defendant on the day of the murder, Manuel Ramirez, Efren Ramirez and Edward Ramirez.

We initially note that defendant’s claim that trial counsel “did not even speak to any of the individuals that [defendant] was with that day” is not entirely correct. Manual Ramirez states in his affidavit that he spoke with investigators working for defense counsel. Efren and Edward Ramirez do not state whether or not they spoke with defense counsel or his team. Therefore, we cannot assume that defense counsel failed to interview these witnesses.

Further, as we have concluded, the affidavits from defendant’s friends regarding his alleged use of PCP is speculative and insufficient to establish that defendant was under the influence of PCP. George Savarese testified at defendant’s resentencing hearing that defendant’s friend Efren Ramirez mentioned that defendant had smoked marijuana that was laced with PCP on the day of the murder. Thus, in addition to being speculative, the evidence that defendant claims was lacking is cumulative. Accordingly, we find that, even if the judge had heard the additional evidence from defendant’s friends, there is no reasonable probability that the result of defendant’s sentencing would have been different. See, 
e.g.
, 
People v. Mitchell
, 189 Ill. 2d 312, 354-55 (2000); 
People v. Sanchez
, 169 Ill. 2d 472, 490-91 (1996). Defendant cannot establish that he suffered prejudice as a result of counsel’s failure to present additional evidence of defendant’s PCP use on the day of the murder, and, as a result, his ineffective assistance of counsel claim fails. Thus, defendant has failed to establish that his defense counsel was ineffective for failing to present evidence as to the effects of PCP.

Defendant also claims that his trial counsel was ineffective for failing “to present a complete picture of David Smith’s tumultuous upbringing” at defendant’s resentencing hearing. Specifically, defendant claims that counsel should have presented evidence that: (1) defendant’s father disciplined him by whipping him; (2) defendant was physically and verbally abused by his stepmother; (3) at the age of 10, defendant engaged in a sexual relationship with his 18-year-old baby-sitter; (4) defendant was forced to take baths with his siblings as an adolescent; (5) when defendant was sent to a detention center, he did not want to return home; and (6) defendant’s brother introduced him to drugs, including PCP, when defendant was 15 years of age. Defendant points to new affidavits from his sister, his father and the mother of his son that establish these facts.

We disagree with defendant’s contention that his trial counsel failed to present a complete picture of defendant’s upbringing. At defendant’s resentencing hearing, his counsel and the State stipulated to the testimony of defendant’s brother, James Smith, which was given at defendant’s first sentencing hearing. James Smith testified that their stepmother did not love them like she loved her own children, that “the punishments were a little different,” that she struck all the children, including defendant, and that she hit them with a broom handle. Moreover, he testified that defendant liked the juvenile detention center where he was sent more than his home. With regard to defendant’s drug use, James Smith testified that defendant drank, smoked marijuana and took “acid” beginning in late junior high school or early high school and that he was personally aware of defendant’s use of PCP from 17 years of age on. Defendant’s mother also testified to his marijuana and acid use.

During defendant’s resentencing hearing, Savarese testified to a comprehensive psycho-social developmental history of the defendant which he completed. To complete that evaluation, Savarese reviewed interviews with defendant’s mother, father, half-brother and sister. He testified that, according to defendant’s siblings, defendant’s father was “very abusive” and that “there was physical abuse.”

Savarese also testified that defendant’s father admitted that he beat defendant with a belt on his back and legs, and that defendant’s sister stated that their stepmother would hit defendant with a board, one time even breaking it on him. He also testified that defendant’s sister stated that “we had to take baths in pairs up until the time that I was 15 years old.” Finally, Savarese testified about defendant’s drug use, stating that defendant “had been experimenting early on with drugs in the beginning around 11 or 12 years old, and that he had used a variety of substance, anything from LSD, PCP, marijuana, cocaine, alcohol, heroin, acid, hallucinogenic mushrooms.”

The evidence offered at defendant’s resentencing hearing establishes that defense counsel presented a complete picture of defendant’s upbringing. The information that defendant claims was lacking was presented through the testimony of his brother and Savarese. Any additional testimony regarding defendant’s childhood would have been cumulative. There is no reasonable probability that introduction of this cumulative evidence would have altered the result of defendant’s resentencing hearing. See, 
e.g.
, 
Mitchell
, 189 Ill. 2d at 354-55; 
Sanchez
, 169 Ill. 2d at 490-91. Thus, defendant’s claim that he received ineffective assistance of counsel fails.

Defendant next claims ineffective assistance of counsel for his trial counsel’s failure to investigate and present witnesses to rebut aggravating evidence of defendant’s conduct while incarcerated. Defendant argues that two employees of the Illinois Department of Corrections, Charles Margherio and Robert Ellinger, should have been called to testify to defendant’s positive behavior in prison. Specifically, defendant presents affidavits from those two employees which state that: (1) defendant exhibited good behavior, was polite, did not cause problems, and showed respect for authority; (2) Margherio never wrote defendant a disciplinary ticket; and (3) Margherio believed that defendant could adjust well to incarceration and would not be a danger to other inmates.

At defendant’s resentencing hearing, his counsel and the State stipulated to the testimony of Timothy Martin, a jail supervisor who testified at defendant’s first sentencing hearing. Martin testified that defendant was a volunteer worker in the prison, that his work was satisfactory, that he got along with the other volunteer workers, that he was polite, courteous, helpful, and cooperative, and that he was not involved in a gang, but rather associated with other inmates who stayed out of trouble. Martin also stated that he never wrote defendant a disciplinary ticket, that defendant became a Christian while in prison, that he attended Bible studies and “witnessed” his faith to other inmates, and that he kept himself and his area neat. Finally, Martin testified that, in his opinion, defendant would be able to succeed in an institutionalized setting.

Again, we find that the evidence defendant claims was lacking is cumulative. Martin testified to everything that Charles Margherio and Robert Ellinger stated in their affidavits. In fact, Martin testified to much more than defendant’s cooperation and good behavior. He presented evidence on defendant’s new commitment to Christianity while incarcerated and his lack of gang activity. We find that, due to the cumulative nature of this evidence, there is no reasonable probability that the outcome of defendant’s proceeding would have been different had his counsel introduced it. Therefore, defendant’s counsel was not ineffective for failing to present this additional evidence.

Defendant relies on 
People v. Orange
, 168 Ill. 2d 138 (1995), and 
People v. Thompkins
, 161 Ill. 2d 148 (1994), to support his claim that he should have received an evidentiary hearing due to his counsel’s failure to introduce mitigating evidence. In 
Orange
, defense counsel presented no witnesses in mitigation. 
Orange
, 168 Ill. 2d at 166. Such is not the case here. Defendant’s counsel here offered a significant amount of evidence in mitigation on defendant’s behalf.

Moreover, in 
People v. Thompkins
, 161 Ill. 2d 148 (1994), defense counsel presented only one witness at the defendant’s sentencing hearing–the defendant’s wife. Counsel in that case submitted numerous letters in support of the defendant, but those letters came from people who did not appear to know the defendant well. Significantly, in that case, the defendant submitted a number of affidavits of his family and friends who stated that they were not contacted by defense counsel prior to the sentencing hearing. 
Thompkins
, 161 Ill. 2d at 166. Here, as noted, defendant’s counsel presented several witnesses on defendant’s behalf at the resentencing hearing. Savarese, who testified on defendant’s behalf, spoke with almost all of the potential witnesses that defendant claims could have provided mitigating evidence and offered testimony about those interviews. The evidence that defendant claims was absent fails to provide any substantial additional mitigation evidence. Rather, as indicated, much of the information in the affidavits is cumulative.

We cannot agree with defendant’s contention that but for his counsel’s failure to present evidence of other mitigating factors, defendant would not have been sentenced to death. In aggravation, the trial court heard, 
inter alia
, that defendant stated that he was “glad” that the victim had died because he “didn’t want her to live remembering how bad he had beaten her.” Moreover, the court heard evidence that the victim suffered at least 29 blunt trauma injuries, three stab wounds, two incised wounds, numerous bruises, abrasions and hemorrhages, and anal injuries which were consistent with forcible penetration of her anus. In sentencing defendant to death, the trial judge stated that he believed this case to be “exceptionally brutal” and he could not remember a case where the facts were more aggravated. We find that the evidence defendant complains was lacking would have had minimal impact in defendant’s sentencing hearing. Thus, even taking all of the affidavits as true, we believe that the trial court properly denied defendant an evidentiary hearing. Defendant has failed to make a substantial showing that his constitutional rights were violated. 
People v. Hobley
, 182 Ill. 2d 404, 428 (1998).

III. Constitutionality of the Illinois Death Penalty Statute

Defendant makes several arguments challenging the constitutionality of the Illinois death penalty statute. The circuit court held that these claims were waived; however, defendant argues that his appellate counsel was ineffective for his failure to raise these issues on direct appeal. This court has previously rejected the arguments that the Illinois death penalty statute is unconstitutional because: it fails to limit the nonstatutory aggravating factors which may be considered by the sentencing authority (see, 
e.g.
, 
People v. Williams
, No. 85453, slip op. at 53-54 (October 13, 2000); it fails to require written findings with regard to nonstatutory aggravating factors (see, 
e.g.
, 
People v. Cloutier
, 178 Ill. 2d 141, 173-74 (1997)); it places a judicial function in the prosecutor (see, 
e.g.
, 
Williams
, slip op. at 53); and it shifts to the defendant the burden of proving that a sentence other than death is appropriate (see, 
e.g.
, 
Williams
, slip op. at 54). Defendant offers no new or compelling reasons for reconsideration of these decisions. Therefore, defendant’s counsel was not ineffective for failing to raise these issues.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court dismissing defendant’s amended post-conviction petition without an evidentiary hearing. We direct the clerk of this court to enter an order setting Wednesday, March 28, 2001, as the date on which the sentence of death entered by the circuit court of Cook County shall be carried out. Defendant shall be executed in the manner provided by law. 725 ILCS 5/119–5 (West 1996). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where defendant is now confined.

Affirmed.

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that Smith’s convictions should not be disturbed. In my view, however, his sentence of death cannot be allowed to stand. For the reasons set forth in my partial concurrence and partial dissent in
 People v. Bull
, 185 Ill. 2d 179 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). Smith’s sentence of death should therefore be vacated and he should be sentenced to a term of imprisonment. 720 ILCS 5/9–1(j) (West 1998).