2022 IL App (1st) 210113-U

No. 1-21-0113

Order filed February 16, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14CR1628701 |
| | ) | |
| LAMAR WHATLEY, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's dismissal of defendant's *pro se* postconviction petition at the first stage of proceedings where defendant's petition does not raise an arguably meritorious claim that his trial counsel provided ineffective or unreasonable assistance.

¶ 2    Defendant Lamar Whatley appeals from an order of the circuit court of Cook County dismissing his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILSC 5/122-1 *et seq.* (West 2020)). On appeal, defendant contends that the court erred in dismissing his

petition where he raised an arguably meritorious claim that his trial counsel[1] was ineffective in failing to assert a claim of self-defense at trial. Defendant asserts that he wanted to testify at trial regarding his claim of self-defense, but his trial counsel persuaded him to not testify and instead put forth a meritless defense of reasonable doubt. Defendant maintains that based on the facts of the case, reasonable counsel would not have put forth a reasonable doubt defense instead of a claim of self-defense. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                            I. BACKGROUND

¶ 4                            A. Defendant's Trial

¶ 5     For a full recitation of the facts from defendant's trial, see this court's order on defendant's direct appeal. *People v. Whatley*, 2020 IL App (1st) 163179-U (unpublished order under Supreme Court Rule 23). As relevant here, in September 2014, defendant was charged by indictment with the attempted first degree murders of Dana Harvey and Jarrod Wright (Jarrod), during which he personally discharged a firearm that proximately caused great bodily harm to the victims. At trial, Nakia Wright (Nakia), defendant's girlfriend, testified that on the night of the shooting, she was at a party at her home. Harvey and Jarrod were guests at the party. During the party, defendant came over to see Nakia and then left alone. About five to ten minutes after defendant left, Nakia heard people shouting outside. Nakia later called the police. The next day, Nakia gave a videotaped interview at the police station where she stated that defendant was angry when he left her house.

¶ 6     Harvey testified that he was on the corner outside Nakia's house when he heard arguing. He looked up and saw someone pointing a gun at him from inside a tan Thunderbird. He knew that vehicle belonged to defendant, but he did not see defendant in the vehicle and could not tell who

---

[1]A review of the record reveals that defendant was represented by more than one counsel at his trial, but his *pro se* petition makes reference to only a singular "trial counsel."

held the gun. The person with the gun then fired toward the partygoers outside. One of the bullets struck Harvey in his left shoulder. After the shooting, Harvey told police that defendant was the shooter.

¶ 7    Jarrod was playing cards outside of Nakia's house when the gunshots were fired. One of the bullets hit Jarrod in his side. Jarrod testified that he did not see the shooter, but the State introduced his written statement following the shooting in which he acknowledged that he saw defendant driving the tan Thunderbird moments before the shooting.

¶ 8    After a search of defendant's tan Thunderbird, police officers discovered a handgun in the engine compartment. An expert in gunshot residue tested samples taken from defendant's hand, but the result was negative.

¶ 9    Defendant did not present any evidence on his own behalf.

¶ 10    The jury found defendant guilty of the attempted first degree murder of Harvey and Jarrod and found that defendant personally discharged a firearm that proximately caused great bodily harm to Harvey and Jarrod. The jury also found defendant guilty of two counts of aggravated battery, and the trial court found defendant guilty of unlawful use of a weapon by a felon. At the subsequent sentencing hearing, the trial court sentenced defendant to consecutive terms of 33 years imprisonment for each of the attempted first degree murder convictions, for a total term of 66 years imprisonment.

¶ 11                                  B. Direct Appeal

¶ 12    This court affirmed defendant's convictions and sentences on direct appeal over his contentions that the State failed to prove him guilty beyond a reasonable doubt, that the trial court erred in denying his motion to suppress evidence, that the court erred in allowing the State to introduce the prior inconsistent statement of a witness, and that his sentence violated the

proportionate penalties clause of the Illinois Constitution. *People v. Whatley*, 2020 IL App (1st) 163179-U (unpublished order under Supreme Court Rule 23).

¶ 13                              C. Postconviction Petition

¶ 14     On September 28, 2020, defendant filed a *pro se* petition for postconviction relief. In his petition, defendant raised, *inter alia*, a claim for ineffective assistance of trial counsel. Defendant alleged that his trial counsel was ineffective in failing to investigate "key areas [] including a motive of self-defense." Defendant further contended that his trial counsel failed to investigate Nakia regarding her interview with police, and did not "allow" defendant to testify at trial to support his claim of self-defense. Defendant also raised a claim of actual innocence where he expanded on his self-defense claim. Defendant alleged that in her statement to police, Nakia told the officers that defendant told her that he did not like her family and that they often have "verbal dispute[s]." Defendant alleged that when he left Nakia's house, he got into an argument with Harvey and one of Nakia's cousins. Defendant asserted that Nakia told detectives that after the shooting, defendant called her and told her that he shot at "them" because they tried to "jump on him." Defendant contended that he had "no opportunity" to testify at trial. Defendant maintained that if he had been able to testify at trial, he would have explained that he had a "justified reason" to defend himself.

¶ 15     Defendant attached an affidavit to his petition in which he averred that the reason he did not provide his version of events at trial was because he was "confuse[d] and misinformed" by his trial counsel who told him to not testify. Defendant explained he had several "altercations" and "disputes" with Nakia's family members in the past where they had "jump[ed] on" him and made threats against him. Defendant set forth the testimony he would have offered at his trial. Defendant would have testified that he was driving home when Nakia called him and asked him to spend time

with her. He went to Nakia's house where he saw a group of people outside. Defendant went inside and spoke to Nakia. He tried to convince her to come outside and get into his car, but she refused to go. Defendant became very angry with Nakia and they started arguing. Defendant "raised [his] hands [to] smack her in the mouth" because she lied to him about seeing her family. One of Nakia's sisters came inside and saw that Nakia's lip was bleeding. Nakia's sister told the people standing outside about Nakia's lip.

¶ 16    When defendant left Nakia's house, a group of people were gathered outside and a "group of guys" were standing by his vehicle. Defendant had a "verbal dispute" with the men. Defendant identified the men as people who he had jumped him and robbed him once before. Defendant averred that one of the men pulled a gun out and pointed it at him. At that point, defendant pulled out his gun and shot at the men. Defendant was scared that they were going to kill him and he did not know what else to do. Defendant averred that his intention was only to frighten them. After he shot at the men, he got into his car and drove away. After defendant drove away, Nakia called him and he told her that "they tried to jump on me and rob me."

¶ 17    Defendant also attached an excerpt from a police report detailing the responding officer's interview with Nakia after the shooting. In the police report, defendant underlined portions of the officer's summary of the interview with Nakia. In the underlined portions, Nakia informed the officers that defendant did not like coming inside her home because he did not get along with her family and they had "verbal disputes." Nakia told the officers that after defendant arrived at her house, they got into an argument. Nakia told defendant to leave, which he did. While defendant was leaving, he got into a confrontation with some of the people at the party. Nakia then heard gunshots outside and later learned what had happened. Nakia called defendant after the shooting and "he informed her that he shot at them because they tried to jump him."

¶ 18     The circuit court dismissed defendant's petition, both making statements on the record and entering a written order. The court noted that defendant alleged that his counsel failed to investigate "key areas," but defendant failed to identify what those areas were. The court found that defendant also failed to allege that there was substantial prejudice and that there was a reasonable probability that the result of his trial would have been different. The court rejected defendant's claim of actual innocence finding that it was not based on newly discovered evidence. The court therefore dismissed defendant's petition as frivolous and patently without merit. Defendant now appeals.

¶ 19                                    II. ANALYSIS

¶ 20     On appeal, defendant contends that the circuit court erred in dismissing his petition as frivolous and patently without merit where he raised an arguably meritorious claim that his trial counsel was ineffective in failing to present a claim of self-defense. Defendant asserts that he wanted to testify at trial that he had a justification for the shooting, but his trial counsel persuaded him to not testify. Defendant contends that his trial counsel's chosen defense of reasonable doubt was unreasonable because defendant was well known to the State's witnesses. Defendant maintains that the self-defense claim was viable because it would have shown that defendant was justified in using the handgun after being threatened by the victims. Defendant asserts that he was arguably prejudiced by counsel's error because the self-defense claim was his only reasonable chance of acquittal.

¶ 21                          A. The Post-Conviction Hearing Act

¶ 22     The Act provides a three-stage mechanism by which a criminal defendant may assert that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2020); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). At the first stage of proceedings, as here, defendant is required to set forth only the "gist" of a constitutional claim, and the circuit court

may summarily dismiss the petition if it finds that the petition is frivolous or patently without merit, *i.e.*, that it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 9, 16 (2009). A petition has no arguable basis in law or fact where it is based on "an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *People v. Allen*, 2015 IL 113135, ¶ 25 (quoting *Hodges*, 234 Ill. 2d at 16). We review *de novo* the dismissal of a postconviction petition at the first stage of proceedings. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 18.

¶ 23                              B. Ineffective Assistance

¶ 24     In determining whether counsel's assistance was ineffective, we follow the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hodges*, 234 Ill. 2d at 17. "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* An objective standard of reasonableness is a standard measured by prevailing professional norms. *People v. Spann*, 332 Ill. App. 3d 425, 430 (2002). We presume that counsel's performance "falls within the wide range of reasonable professional assistance." (Internal quotation marks omitted.) *People v. Ramirez-Lucas*, 2017 IL App (2d) 150156, ¶ 41 (quoting *People v. Miller*, 346 Ill. App. 3d 972, 982 (2004)). "Decisions involving judgment, strategy, or trial tactics will not support a claim of ineffective assistance." *Id.*

¶ 25                                  C. Self-Defense

¶ 26     Defendant contends that his petition raises the gist of a claim that his counsel's performance arguably fell below an objective standard of reasonableness and that he was arguably prejudiced by his counsel's performance. Defendant asserts that his counsel was arguably

ineffective for pursuing the "near hopeless" claim of a reasonable doubt defense, rather than a claim of self-defense. Defendant points out that the record shows that trial counsel considered pursuing a self-defense claim as evidenced by a pretrial notice of intent to introduce evidence pursuant to *People v. Lynch*, 104 Ill. 2d 194 (1984). Defendant asserts that this evidence would have been highly probative if counsel had asserted a self-defense claim, and, combined with defendant's proposed testimony, arguably would have supported a viable self-defense claim.

¶ 27 We first observe that defendant's claims in support of self-defense are scatted throughout his *pro se* petition. Part of the claim appears alongside his other claims of ineffective assistance of counsel, but other parts, including references to his affidavit detailing his proposed testimony, appears alongside his claim of actual innocence. The supreme court has recognized, however, that a *pro se* petitioner is not required to set forth a claim clearly or completely, so long as a petitioner sets forth the "gist" of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244-45 (2001). We will therefore assess defendant's claim of ineffective assistance considering all of the allegations and facts raised throughout his petition in support of that claim.

¶ 28 Despite our recognition of this lenient pleading standard, we find that defendant's petition fails to present the gist of a claim that his counsel's performance was arguably deficient for two reasons. First, counsel's decision to pursue a reasonable doubt defense rather a self-defense claim was a matter of trial strategy. Second, defendant, whose testimony is the primary basis for the alleged self-defense claim, voluntarily elected to not testify at trial.

¶ 29 With regard to counsel's trial strategy, it is well-settled that "[d]ecisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79 (citing *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002)). As such, counsel's decisions on these matters are "generally immune

from claims of ineffective assistance of counsel." *Id.* (citing *People v. Smith*, 195 Ill. 2d 179, 188 (2000)). It is defendant's burden to overcome the "strong presumption" that the challenged action or inaction may have been the product of sound trial strategy. *Id.* "A defendant may overcome the strong presumption that defense counsel's choice of strategy was 'sound if counsel's decision appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy.' " *Id.* ¶ 81 (quoting *People v. King*, 316 Ill. App. 3d 901, 916 (2000)). Sound trial strategy includes the use of the rules of evidence and procedure to avoid the admission of incriminating statements, harmful opinions, and prejudicial facts. *Id.* (quoting *People v. Moore*, 279 Ill. App. 3d 152, 159 (1996)).

¶ 30   Here, we cannot say that defendant's petition raises the gist of a claim to overcome the presumption that his counsel's decision to pursue a reasonable doubt defense was the product of sound trial strategy. None of the witnesses, including the victims, identified defendant as the shooter in their trial testimony. Rather, both Jarrod and Harvey testified at trial that they could not see the shooter in the vehicle. Although both were impeached with their statements to police, counsel's decision to pursue a claim of reasonable doubt based on their recantation of their statements to police cannot be said to be arguably unreasonable. There was also a lack of physical evidence connecting defendant to the shooting. An expert in gunshot residue tested samples taken from defendant's hand, but the result was negative. Evidence technicians recovered a revolver from defendant's vehicle, but there was no evidence presented linking the recovered revolver to the bullets that struck either Jarrod or Harvey.

¶ 31   In contrast, the only evidence defendant points to in the record in support of his claim of self-defense, is an excerpt from a police report from a statement Nakia made to police after the incident. In that statement, Nakia called defendant after the shooting and he told her that "he shot

at them because they tried to jump him." It is well-settled, however, that written police reports are generally not admissible in Illinois because they contain conclusions or are hearsay. *Kociscak v. Kelly*, 2011 IL App (1st) 102811, ¶ 25 (citing *People v. Watkins*, 98 Ill. App. 3d 889, 900 (1981)). Nakia did not repeat this representation in her videotaped statement or during her trial testimony. There was thus no evidence available to trial counsel to support a claim of self-defense. As discussed further below, defendant's own proposed testimony was unavailable because defendant elected to not testify.

¶ 32    Nor do we find that the fact that defense counsel considered presenting evidence pursuant to *People v. Lynch*, but ultimately chose to not pursue a claim of self-defense supports defendant's position. We have recognized that a counsel's decision to abandon a trial strategy may be reasonable under the circumstances. *Wilborn*, 2011 IL App (1st) 092802, ¶ 80. It is well-settled that a defendant may not introduce evidence pursuant to *Lynch* until a defendant introduces evidence of self-defense. *People v. Guyton*, 2014 IL App (1st) 110450, ¶ 52. As discussed, the only admissible evidence of a claim of self-defense would have been defendant's own testimony. However, defendant elected to not testify. Thus, because defense counsel could not introduce any evidence of self-defense, he would not have been able to introduce the proposed *Lynch* evidence. Counsel's only reasonable viable defense, therefore, was a defense of reasonable doubt. Although this defense was ultimately unsuccessful, the record shows that it was not arguably unreasonable such that counsel's decision to pursue this defense rather than one of self-defense supports a claim that his assistance was arguably ineffective. See *People v. Smith*, 326 Ill. App. 3d 831, 850 (2001). Accordingly, we cannot say that defendant's petition raises the gist of a constitutional claim that defense counsel's decision to pursue a defense of reasonable doubt was so irrational or unreasonable that his performance arguably fell below an objective standard of reasonableness.

¶ 33 Our conclusion that defense counsel's performance was not arguably unreasonable is bolstered by the fact that defendant's proposed claim of self-defense was based almost entirely on his own testimony. It is a defendant's fundamental constitutional right to choose whether or not to testify at trial. *People v. Madej*, 177 Ill. 2d 116, 145-46 (1997). "It is now generally recognized that the decision whether to testify ultimately rests with the defendant." *Id.* (citing *People v. Brocksmith*, 162 Ill. 2d 224, 227 (1994); *People v. Thompkins*, 161 Ill. 2d 148, 177 (1994)). Therefore it "is not one of those matters which is considered a strategic or tactical decision best left to trial counsel." (Internal quotation marks omitted.) *Id.* (quoting *People v. Seaberg*, 262 Ill. App. 3d 79, 83 (1994)). Although defendant alleges that counsel advised him to not testify, he does not assert that counsel prevented him from doing so. *People v. Youngblood*, 389 Ill. App. 3d 209, 217 (2009) ("Advice not to testify is a matter of trial strategy and does not constitute ineffective assistance of counsel unless evidence suggests that counsel refused to allow the defendant to testify."). Even if defendant alleged that his trial counsel refused to allow him to testify, he must show that he made a " 'contemporaneous assertion *** of his right to testify.' " *Id.* (quoting *People v. Brown*, 54 Ill. 2d 21, 24 (1973)). Defendant does not allege that he made such an assertion, and, indeed, a review of the record demonstrates that defendant made the voluntary decision to not testify, acknowledging that it was his right do so.

¶ 34 Before the defense rested without presenting any evidence, the trial court judge questioned defendant regarding his counsel's decisions. The court first asked defendant about his counsel's decision to not call any witnesses, and defendant stated that he agreed with his counsel's decision. The court then asked defendant about his right to testify.

"THE COURT: Do you understand you have the right to testify also?

THE DEFENDANT: Yes, sir.

THE COURT: And unlike calling witnesses, that's not your attorneys' decision. That's your decision. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: As a matter of fact, your attorneys could tell you not to testify but they can't control that because that's up to you. That's your decision. Do you understand that?

D: Yes, sir.

THE COURT: Do you understand you can testify today in front of this jury if you desire? Do you understand that?

D: Yes, sir.

THE COURT: Do you want to testify?

D: No, Sir.

THE COURT: And have you talked to your attorneys about that decision, whether or not you desire not to testify?

D; Yes, sir."

The record thus shows that defendant was aware that the decision of whether to testify was his alone, and defendant voluntarily waived the right to testify. If defendant wished to present testimony that he acted in self-defense, the trial court made it clear that he had an opportunity to do so. We observe that the trial court in this case closely followed the procedure recommended by this court in *People v. Frieberg*, where we suggested that trial courts:

"in every criminal case [should] take the few seconds needed, after the State has rested its case in chief and before the presentation of the defense case, to admonish the

defendant personally that he alone possesses the right to choose whether to testify on his own behalf, and that he should make that decision after consulting with counsel. Trial courts should emphasize to the defendant that whatever trial counsel's advice on this point may be, counsel cannot force the defendant to testify, nor can counsel prevent the defendant from testifying. For good measure, the court should once again inquire of the defendant before he testifies (or the defense rests without his testimony) to ensure that his decision about this matter was his alone and not coerced." *People v. Frieberg*, 305 Ill. App. 3d 840, 852 (1999).

¶ 35    Thus, where defendant's proposed self-defense claim relied almost entirely on his own testimony, and where defendant voluntarily chose to not testify at trial, we cannot say that trial counsel's performance was arguably deficient in choosing to present a reasonable doubt claim rather than a claim of self-defense. Because we find that defense counsel's performance was not arguably unreasonable, we need not address whether counsel's performance arguably prejudiced defendant. See, *e.g.*, *People v. Haynes*, 2019 IL App (5th) 150221-U, ¶ 51 (unpublished order under Supreme Court Rule 23). We therefore find that the trial court did not err in dismissing defendant's postconviction petition at the first stage of proceedings where defendant failed to present the gist of a meritorious claim that his counsel performance was arguably deficient.

¶ 36                                III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.