2021 IL App (3d) 170197
Opinion filed November 30, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0197 Circuit No. 09-CF-1362 |
| DOUGLAS F. CANAS JR., | ) ) ) | Honorable Sarah-Marie F. Jones, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Presiding Justice McDade dissented.

**OPINION**

¶ 1      Defendant, Douglas F. Canas Jr., appeals the Will County circuit court's denial of his motion for leave to file a successive postconviction petition, arguing the court erred in permitting the State to provide input regarding the merits of his motion before the court made a cause and prejudice determination. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      On June 25, 2009, the State charged defendant with two counts of criminal sexual assault (720 ILCS 5/12-13(a)(2) (West 2008)). Count I of the indictment alleged that "defendant, knowing

that [G.S.] was unable to understand the nature of the act, committed an act of sexual penetration with [G.S.], in that the defendant knowingly placed his penis in the vagina of [G.S.]." Count II alleged that "defendant, knowing that [G.S.] was unable to give knowing consent, committed an act of sexual penetration with [G.S.], in that the defendant knowingly placed his penis in the vagina of [G.S.]." The cause proceeded to a jury trial on both charges where defendant was represented by private attorney, John Kogut.

¶ 4 At trial, the victim, G.S., testified that on September 20, 2008, after working a night shift, she and several coworkers, including defendant, Donte Gant, and Hassan Ware, went to a park to drink alcohol and play basketball. G.S. consumed two drinks before she played basketball. During the game, G.S. felt dizzy and nauseous. G.S. had to urinate and climbed to an area on a nearby playground to do so. As G.S. attempted to pull up her pants, she fell down a slide. While walking back to the basketball court, G.S. began vomiting.

¶ 5 At some point, G.S. lost consciousness and awoke to the pain of a man penetrating her vaginal area. She was in the backseat of a car, her pants and boxer shorts had been pulled down, and she heard Gant's voice describe her vaginal area. G.S. said on redirect that she felt Gant touch her vagina prior to feeling a penis in her vagina. When G.S. looked over her shoulder, she saw defendant. Defendant removed his penis, and G.S. lost consciousness a second time.

¶ 6 G.S. awoke fully clothed in the driver's seat of her car. G.S. called her friend, Arele Thompson, and told her about the sexual assault. Thompson testified that G.S. was crying and her speech was slurred. Thompson said G.S. told her that she awoke to find "a Mexican *** fucking me."

¶ 7 G.S. attempted to drive, but she was falling in and out of consciousness. G.S. pulled over and fell asleep in her car for seven or eight hours. G.S. awoke and drove home. There, she noticed

2

that someone had drawn on her face with black marker. G.S. then went to the hospital where a nurse performed a sexual assault examination. Forensic analysis of the swabs taken during the examination indicated that semen found on G.S.'s boxer shorts matched defendant's DNA. Analysis of the semen on the vaginal swab did not reveal a DNA profile.

¶ 8     The defense first called Jesse Garcia to testify. Garcia was at the park and recalled that G.S. climbed to the top of the slide and announced that she was going to "pee down the slide." G.S. slid down the slide and then pulled her pants up.

¶ 9     Gant testified that G.S. announced after playing basketball that she was "going to go and use the bathroom down the slide." G.S. then waved her hands in an attempt to get the attention of her coworkers. G.S. went down the slide with her pants off. Approximately two hours later, G.S. went to her car. G.S. was stumbling and could not walk straight, so Gant and Ware took G.S.'s keys. G.S. laid down in the backseat of her car, and while she was asleep, defendant drew on her face with a marker. Gant said neither he nor defendant removed G.S.'s pants.

¶ 10     Ware testified that while he was at the park, G.S. went to the top of the slide, called attention to herself, and urinated on the slide. In the process, G.S. fell down the slide with her pants down. Later, Ware stopped G.S. from leaving in her car because he believed that G.S. was too intoxicated to drive. G.S. then fell asleep in the backseat of the car. Defendant drew on G.S.'s face with a marker.

¶ 11     Defendant testified that he knew G.S. from work. Defendant played basketball with the group of coworkers. He recalled that G.S. left the game after being injured.

¶ 12     While defendant was using a porta-potty, G.S. entered, began kissing defendant, and grabbed his penis. G.S. masturbated defendant's penis until defendant ejaculated. Defendant told G.S. that they could not have sexual intercourse because he did not have a condom.

3

¶ 13 Later, G.S. attempted to get everyone's attention and urinate down a slide, but she fell down the slide. Defendant said G.S. got in the backseat of her car and fell asleep. Defendant and Gant drew on G.S.'s face with a marker while she slept. Defendant denied removing G.S.'s pants and inserting his penis in her vagina.

¶ 14 During deliberations, the jury sent two notes to the court indicating that it could not reach a verdict. In each instance, the court instructed the jury to continue deliberations. The jury eventually found defendant guilty of both charges. Thereafter, private attorney Raul Villalobos entered his appearance on behalf of defendant and Kogut withdrew his representation. Villalobos represented defendant through the posttrial proceedings and on direct appeal.

¶ 15 Defendant filed a motion for new trial in which he argued the evidence was insufficient to prove his guilt, jury misconduct, and ineffective assistance of counsel for failing to present a juror's comment that defendant "lied, yes you did it" to the court. The court denied defendant's motion and sentenced defendant to two concurrent terms of six years' imprisonment.

¶ 16 On direct appeal, defendant raised three arguments: (1) the evidence was insufficient to prove his guilt beyond a reasonable doubt, (2) he received ineffective assistance of counsel when counsel did not inform the court of the statement made by a juror; and (3) the court abused its discretion in denying his motion for new trial based on the juror's statement. *People v. Canas*, 2013 IL App (3d) 120687-U. We affirmed defendant's convictions and sentences.

¶ 17 On December 1, 2014, defendant, as a self-represented litigant, filed a postconviction petition, arguing: (1) Villalobos was ineffective for failing to argue that Kogut was ineffective for failing to investigate an alternative suspect; (2) defendant's sentence was imposed to punish him for exercising his right to a jury trial; and (3) the State failed to prove him guilty beyond a reasonable doubt. The circuit court dismissed the petition as frivolous and patently without merit.

4

On appeal, defendant argued that his convictions and sentences violated the one-act, one-crime rule. We affirmed the circuit court's judgment. *People v. Canas*, No. 3-15-0199 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 18    On November 28, 2016, defendant, as a self-represented litigant, filed a motion for leave to file a successive postconviction petition. Defendant alleged there was cause for his failure to raise those claims earlier because he had no access to the law library, he suffered from mental health issues that required that he take psychotropic medication that made him drowsy and inhibited his ability to function, he did not have a complete trial transcript, and "case law not available at time of petition." Defendant also alleged that he suffered prejudice because the errors identified in his successive petition so infected his trial that the resulting conviction violated due process. The claims underlying the petition included the following claims of ineffective assistance of trial counsel: (1) Kogut refused defendant's request to "accept a hung jury decision" (2) Kogut lied to defendant about the unavailability of a lesser included offense instruction; (3) Kogut did not explain to defendant that consent could be a defense to criminal sexual assault; (4) Kogut did not present evidence to show that G.S. did not have the intelligence to understand the nature of the act and its possible consequences; (5) Kogut failed to have Gant's DNA tested to provide an alternative explanation for the semen found in G.S.'s vagina; and (6) Kogut did not obtain alcohol and drug testing on G.S.'s blood and urine and this evidence would have impeached G.S.'s testimony indicating that she was drugged before the sexual assault. Defendant argued that Villalobos provided ineffective assistance in failing to raise these issues during the posttrial proceedings and in defendant's direct appeal. Finally, defendant alleged a claim of actual innocence "based on evidence not available to [him] at the time of [his] jury trial." Specifically,

G.S.'s urine and blood samples could have been used to impeach G.S.'s testimony and "proved defendant not guilty."

¶ 19      On December 5, 2016, the State filed an objection, arguing defendant could not satisfy either prong of the cause and prejudice test because defendant's claims could have been raised either on direct appeal or in his initial postconviction petition, and defendant failed to show that the trial's outcome would have been different had defendant presented those claims earlier.

¶ 20      On January 20, 2017, the court held a hearing where it discussed defendant's filings with the State. Defendant was not present at this hearing. The following exchange occurred:

> "[THE STATE]: So we did file an objection to [defendant's] motion for leave to file a successive post-conviction petition. And basically my objection spells out why. That he has not met the cause and prejudice test necessary for filing such a petition. Basically for cause he just says that he was denied access to the law library and has a mental disability that prohibited him from doing so previously, but he did file a first post-conviction petition.
>
> THE COURT: What are you asking me to do today?
>
> [THE STATE]: Deny his motion for leave to file the successive post-conviction petition for failure to meet the cause and prejudice test.
>
> THE COURT: And he did not file any responsive pleading?
>
> [THE STATE]: He did not, no. And I filed this on December 5th.
>
> THE COURT: Show that [the State's] motion to dismiss [defendant's] leave to file a successive [postconviction] petition is granted."

In characterizing defendant's assertions of cause—both in its written objection and in its argument before the court—the State omitted defendant's claim that the allegations in his petition relied on

6

case law that had arisen after his initial postconviction petition. The court did not give any indication of awareness that defendant had made this allegation or that the State had failed to mention it.

¶ 21        Later that day, the court issued a written order denying defendant's motion for leave to file a successive postconviction petition. Defendant appeals.

¶ 22                                    II. ANALYSIS

¶ 23        Defendant argues the circuit court erred in permitting the State to provide input regarding his request for leave to file a successive postconviction petition, and therefore we should remand for further proceedings.

¶ 24        The Post-Conviction Hearing Act contemplates the filing of a single postconviction petition without leave of the court. 725 ILCS 5/122-1(f) (West 2016). The circuit court should grant leave to file where it finds a defendant has demonstrated cause for the failure to bring the claim earlier and prejudice flowing from that failure. *Id.* To establish cause for leave to file a successive petition, defendant must identify "an objective factor that impeded his or her ability to raise as specific claim during his or her initial post-conviction proceedings." *Id.* To establish prejudice, defendant must demonstrate "that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

> "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35.

7

¶ 25 "[T]he State should not be permitted to participate at the cause and prejudice stage of successive postconviction proceedings." *People v. Bailey*, 2017 IL 121450, ¶ 24. The leave to file stage is a preliminary screening that calls for "an *independent* determination by the circuit court." (Emphasis added.) *Id.*

¶ 26 The record clearly establishes that the State impermissibly participated in the leave to file proceedings. See *id.* The appropriate remedy for this error is less clear. We held this appeal in abeyance pending the Illinois Supreme Court's decision in *People v. Lusby*, 2020 IL 124046, with the hope that the court would settle this question. In *Lusby*, as in *Bailey* and the instant case, the defendant filed a motion for leave to file a successive postconviction petition and the State filed an objection. *Id.* ¶ 22. The circuit court denied defendant's motion. *Id.* On direct appeal, this court did not remand for the circuit court to make a new cause and prejudice determination, but instead considered the underlying merits of the motion. *Id.* ¶¶ 17-29. The supreme court reiterated that it is error for the State to participate at the leave to file stage. *Id.* ¶ 29. Then, the court stated that in the interest of judicial economy, it would consider the merits of defendant's motion. *Id.* In a footnote, the *Lusby* court added "[t]he appellate court is not foreclosed from adopting that approach." *Id.* ¶ 29 n.1. Therefore, we apply the same approach in this case, and in the interest of judicial economy, we examine the merits of defendant's motion for leave.

¶ 27 From our review, defendant's motion failed to demonstrate cause and prejudice. Defendant's allegations of cause are largely conclusory and are supported solely by affidavits from defendant. See *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010) ("it is *** defendant's burden to obtain leave, and he must submit enough in the way of documentation to allow a circuit court to make that determination"). More problematic for defendant is that his proposed claims do not meet the prejudice standard.

¶ 28      Defendant alleges several ineffective assistance of trial and appellate counsel claims. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Specifically, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). "A 'reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *Id.* (citing *People v. Patterson*, 192 Ill. 2d 93, 107 (2000)). "Matters of trial strategy are generally immune from claims of ineffective assistance of counsel." *People v. Smith*, 195 Ill. 2d 179, 188 (2000).

¶ 29      First, defendant asserts that Kogut provided ineffective assistance when he prevented defendant from accepting the "hung jury." Defendant does not provide support for his supposition that he, as a litigant, could "accept a hung jury" and impliedly require the court to declare a mistrial. To the contrary, "It is *** well established that a court may properly declare a mistrial and discharge a jury when it is apparent the jury is hopelessly deadlocked." *People v. Cole*, 91 Ill. 2d 172, 175 (1982). Therefore, Kogut's performance was not deficient for failing to pursue this meritless claim.

¶ 30      Second, defendant claims that Kogut was ineffective for: (1) failing to request that the court issue a lesser included offense jury instruction, (2) raise a consent defense, and (3) argue that G.S. did not understand the nature of the act. Each of these claims fail because they are attributable to

9

trial strategy. See, *e.g.*, *People v. W.T.*, 255 Ill. App. 3d 335, 351 (1994) (the decision to offer a lesser included offense instruction is one of trial strategy which has no bearing on the competency of counsel). Defendant's trial defense was that he did not commit the charged act of sexual penetration. *Supra* ¶¶ 12-13. For counsel to request a lesser included offense instruction, raise a consent defense, or argue that G.S. did not understand the nature of the offense, counsel necessarily would have had to concede that defendant had sexual contact with G.S. Such a concession would be inconsistent with defendant's defense that he did not penetrate or touch G.S.'s vagina. Therefore, these decisions are reasonably attributable to trial strategy and do not constitute ineffective assistance of counsel.

¶ 31     Third, defendant argues Kogut was ineffective for failing to have Gant's DNA analyzed and compared to the DNA in the semen recovered on the vaginal swab. However, defendant cannot show that he suffered prejudice as a result of this decision. The forensic evidence also showed that DNA found on G.S.'s boxer shorts matched defendant. This inferentially indicated that defendant had sexual contact with G.S., and it corroborated G.S.'s testimony that she saw defendant sexually assault her when she looked over her shoulder. The additional DNA analysis only had the potential to inculpate Gant, and it did not have the potential to exculpate defendant. Therefore, this evidence possessed no potential to change the outcome of this trial.

¶ 32     Fourth, defendant asserts that Kogut was ineffective for failing to have G.S.'s blood and urine analyzed to show that she was only drunk, not drugged, at the time of the offense. Additionally, according to defendant, this evidence would have served to impeach G.S.'s testimony that she only drank alcohol, as defendant alleged that he saw G.S. voluntarily consume drugs. Defendant also cannot demonstrate prejudice resulting from the omission of this evidence because, as charged in this case, the cause of G.S.'s unconscious state was irrelevant. The statute

10

only required proof that the victim was unable to understand the nature of the act or was unable to give consent. 720 ILCS 5/12-13(a)(2) (West 2008). Further, while this evidence could have impeached G.S.'s testimony regarding the cause of her unconscious state, it did not refute the other physical and testimonial evidence that corroborated G.S.'s recollection of the sexual assault. Therefore, it did not have the potential to alter the outcome of the case.

¶ 33    Defendant's claims of ineffective assistance of appellate counsel similarly fail because these allegations derived from Villalobos's failure to raise the ineffective assistance of trial counsel claims that we found to be without merit. See *People v. Edwards*, 195 Ill. 2d 142, 163-64 (2001) (claims of ineffective assistance of appellate counsel fail where the underlying claim is meritless).

¶ 34    Finally, defendant's claim that G.S.'s blood and urine samples, which were unavailable to him at the time of trial and proved his actual innocence, is also without merit. "[T]o succeed on a claim of actual innocence, the defendant must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial." *People v. Coleman*, 2013 IL 113307, ¶ 96. Defendant has not met this standard, as it is not clear from the record that the blood and urine evidence defendant relies on is new, as it would have been procured at the time of G.S.'s sexual assault examination. Moreover, this evidence is unlikely to change the result on retrial, as it only had the potential to explain the cause of G.S.'s unconsciousness and potentially impeach G.S.'s testimony.

¶ 35    Despite the State's erroneous input during the motion for leave to file a successive postconviction petition, the court did not err in denying defendant's motion for leave to file a successive postconviction petition. From our review, defendant failed to establish cause and prejudice needed for leave to file a successive postconviction petition.

¶ 36                                III. CONCLUSION

11

¶ 37    The judgment of the circuit court of Will County is affirmed.

¶ 38    Affirmed.

¶ 39    PRESIDING JUSTICE McDADE dissenting:

¶ 40    It is undisputed that the State improperly participated at the leave-to-file stage of the postconviction proceedings in this case, thus depriving defendant of the "independent determination of the circuit court" required by Post-Conviction Hearing Act (Act). *Bailey*, 2017 IL 121450, ¶ 24; 725 ILCS 5/122-1(f) (West 2016). Despite this clear error, the majority affirms the denial of defendant's motion for leave to file a successive postconviction petition on the grounds that defendant nevertheless failed to satisfy the cause-and-prejudice test. This resolution does nothing more than deprive defendant of the required "independent determination" for a second time, and for that reason I respectfully dissent.

¶ 41    As the majority points out, our supreme court established in *Lusby* that the appellate court has the discretion to consider the underlying merits of a defendant's motion for leave to file in these circumstances. *Lusby*, 2020 IL 124046, ¶ 29 n.1. Thus, it is now clear that the appellate court *may* conduct a *de novo* review of the motion for leave to file, should it choose to do so. Likewise, it remains clear that this court may also simply remand the matter so that the circuit court may make the required determination. The *Lusby* court did not discuss whether either remedy is preferred, and its footnote indicating that we are "not foreclosed from" conducting a *de novo* review is far from a directive or even a full-throated endorsement of that approach. See *id.*

¶ 42    The ill-defined notion of "judicial economy"—invoked by the supreme court in both *Bailey* and *Lusby*—provides little actual direction. The majority cites that principle in the present case as the sole reason for addressing the merits of defendant's petition. It offers no explanation as to how the interests of judicial economy are served by proceeding in this fashion. Indeed, the parties'

12

extensive briefing of the underlying issues and the majority's thorough analysis of each does not seem particularly economic, especially when compared to a remand for the review of an already-filed motion and oral announcement of whether the petition will be docketed.

¶ 43     As stated above, our supreme court has made clear that the State's participation at this stage of postconviction proceedings is error because the Act calls for "an independent determination by the circuit court" regarding cause and prejudice. *Bailey*, 2017 IL 121450, ¶ 24. Yet, for a reviewing court to reach the merits of the motion on appeal is simply to deprive a defendant of that determination, free of both State input and judicial consideration of that input, for a second time. Such a tact essentially nullifies the "independent determination" requirement in its entirety. We presume the supreme court would prefer that a remedy that so overtly frustrates what it has found to be a clear legislative intent (*id.* ¶ 16) should be applied only sparingly.

¶ 44     In light of these considerations, remand is an especially appropriate remedy given the breadth of the error in this case. Here, the State filed a prohibited written objection urging denial of defendant's motion then argued its objection at an improper hearing, misrepresenting defendant's assertions of cause to the court while defendant was not present. Of further concern, the circuit court appears not to have read defendant's motion and to have faulted defendant for not replying to the State's objection—again, a response the State was prohibited from filing in the first place. In fact, the court offered no explanation or analysis in support of its decision, heightening the possibility that its denial of defendant's motion was nothing more than a sanction for defendant's "failure" to file a reply.

¶ 45     We should therefore vacate the circuit court's order denying defendant's motion for leave to file and remand the matter so that the court may conduct an independent inquiry into whether that motion sufficiently demonstrates the required cause and prejudice. Additionally, a new judge

13

who has not already heard the State's objection should preside over the proceedings on remand, as a truly independent determination of defendant's motion for leave would otherwise be impossible. *People v. Smith*, 2020 IL App (3d) 170666, ¶ 11