NOTICE
Decision filed 04/26/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190404-U

NO. 5-19-0404

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 18-CF-1959 |
| | ) | |
| CHARLES ANDERSON, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State presented sufficient evidence to support defendant's aggravated unlawful use of a weapon conviction, and counsel was not ineffective for failing to assert the defense of necessity because such decision was a matter of trial strategy.

¶ 2    Defendant was convicted of aggravated unlawful use of a weapon after police discovered a gun in his vehicle. On appeal, he argues that the State failed to prove his possession was voluntary, and counsel was ineffective for failing to assert the defense of necessity. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant was charged, by information, with aggravated unlawful use of a weapon (AUUW) for knowingly possessing a handgun at a time when he was not on his own land or place of business without currently possessing a valid license under the Firearm Concealed Carry Act,

1

in violation of 24-1.6(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.6(a)(1) (West 2018)) (count I), felon in possession of a weapon for being previously convicted of a felony and possessing a handgun, in violation of section 24-1.1(a) of the Code (*id.* § 24-1.1(a)) (count II), and unlawful possession of a weapon by a felon for possessing a handgun after having been convicted of a felony, in violation of section 24-1.1(a) of the Code (*id.*) (count III). The court subsequently granted the State's motion to dismiss charge III.

¶ 5     The trial occurred over two days, July 9 and 10, 2019. Prior to trial, the parties stipulated that defendant had previously been convicted of a felony, and the stipulation was submitted to the jury.

¶ 6     Detective Tia Mitchell and Officer Isaiah Sherrod testified for the State. Their testimonies revealed that on December 28, 2018, Detective Mitchell observed a tan Buick cut over two lanes of traffic while the traffic light was red almost causing an accident. The officers followed the car and observed it disobey a stop sign. Accordingly, the officers pulled the car over. As soon as the car stopped, defendant immediately threw something that looked like keys out of the window and exited the car, causing a safety concern. The officers exited their vehicle and pulled their weapons. Officer Sherrod detained defendant due to his erratic behavior.

¶ 7     After dispatch informed the officers that defendant's license was revoked, Officer Sherrod arrested defendant and placed him in the patrol vehicle. Officer Sherrod then asked defendant if he was armed. Defendant stated that he did not have weapons on his person but there was a firearm in the car beneath the seat. Officer Sherrod found a loaded black and purple 9-millimeter semi-automatic Luger beneath the driver's seat. On cross-examination, Officer Sherrod testified that the car was returned to defendant's "wife or his girlfriend."

2

¶ 8    Aaron Horn, a forensic scientist for the Illinois State Police, testified that the gun recovered from defendant's car was in proper working condition. Randall Wilson, an executive for the Firearm Owner's Identification (FOID) Application Section of the Illinois State Police Firearms Services Bureau, testified that after a diligent search in various ways, he found no record of defendant ever having applied or received a FOID card.

¶ 9    At the close of the State's evidence, the defense motioned for a directed verdict, arguing the State failed to make a *prima facie* case against defendant. The court denied the motion.

¶ 10    The defense first called defendant's son, Sanchez Fields, to testify. Fields stated that he was moving on the day his dad was arrested. His dad came to his house in defendant's girlfriend's car and helped Fields move all day. "About 20 to 30, maybe 45 minutes, almost an hour" after defendant left, he called Fields. At no point that day did Fields see defendant with a firearm.

¶ 11    Elouise Rayford, defendant's live-in girlfriend of 20 years, testified next. She said that she owned the Buick that defendant drove on December 28, 2018, and defendant was helping his son move all that day. Rayford identified the gun found in the car as her brother-in-law's. She testified that she found the gun around December 18, 2018, when she cleaned out her brother-in-law's house after he passed. She took the gun in the house once but put it back in the car when her grandchildren came over for Christmas. She intended to give the gun away or to defendant's sister, but she forgot due to the holidays. Rayford stated that she never told defendant about the gun because he is a felon and is not supposed to be around guns. On cross-examination, Rayford averred that defendant had a set of keys to her car and used it when needed.

¶ 12    Defendant also testified. He stated that he helped his son move all day before he was arrested. As he was driving home, his phone rang, and he believed it was stuck between the seats of the car. Defendant could not reach the phone, so he pulled into a parking lot to find it. While

3

searching for his phone, he felt a towel under the driver's seat. When he pulled the towel out, he found a gun was wrapped in it. Defendant then called his son and asked whether he or one of his friends got into defendant's car. His son answered in the negative.

¶ 13    Defendant thought about tossing the gun onto the street but did not think it was right. He later indicated that he did not want any kids to find the gun. He decided to take the gun to his niece who lived closer to the parking lot than his home. Defendant pulled out of the parking lot slowly to allow the cars waiting at the traffic light to move forward so that he could drive across two lanes of traffic to the turning lane. By the time he got to the turning lane, the light was turning yellow, so he stepped on the gas. Defendant admitted that due to the location of the parking lot, traffic, and the changing traffic light, he made a left turn from the right lane. However, he stated that the cars in the opposite direction waited for him to turn and claimed the officers lied when they said that he almost caused an accident. Defendant then approached a stop sign and did not come to a complete stop but came to a "rolling stop." At this time, defendant noticed the cop lights and pulled over. He was still on the phone with his son and told his son to call Rayford because defendant knew he was going to jail due to his suspended license. Defendant observed Officer Mitchell with her gun out and relayed this to his son. Fields told defendant to drop the phone, roll down the window, and toss his keys out. Defendant followed his son's instructions.

¶ 14    The officers approached from both sides of the car. Defendant testified that Officer Sherrod instructed defendant to open the door, get out of the car, pick up his keys, and put the keys on the car. Defendant complied. Defendant also complied with the officer's instructions to put his hand behind his neck and lean against the back of the car. Once the officer came behind defendant and grabbed his hands, Officer Sherrod holstered his gun, then completed a pat down and handcuffed defendant.

4

¶ 15    Defendant stated at that time, Officer Mitchell ran a check on defendant's ID and discovered defendant had a revoked driver's license. Officer Mitchell informed defendant that a towing company would come tow the car, which made him panic because it was his girlfriend's car and she needed it to get to work. So, defendant asked Officer Sherrod if his son—who was still on the phone—could come get the car to avoid having to pay any towing fees. Officer Sherrod said the car would be towed and asked if defendant had any drugs or "anything in [there] that shouldn't be." Defendant told the officers that a gun was under the passenger seat. Defendant averred that from the time he found the gun to the point that officers found the gun was three to five minutes.

¶ 16    On cross-examination, when asked why defendant told the officers that his son was shot, defendant stated, "I don't—I don't—I don't remember. I don't remember why I said half the things I said." The State also asked if defendant passed multiple parking lots and gas stations. Defendant answered affirmatively and stated that he knew he should get rid of the gun but continued to drive with the gun under his seat until he was pulled over. Defendant conceded that he could have asked his son or niece to come get the gun.

¶ 17    Defense counsel renewed his motion for directed verdict, arguing that the State failed to prove knowledge of the weapon with sufficient time for defendant to dispose of the weapon. The court again denied the motion.

¶ 18    During closing arguments, the State and defense counsel focused on the issue of whether defendant knew the gun was in the car more than a few minutes before he pulled into the parking lot. The State contended there were only a few ways defendant could know the gun was under his seat, and it did not make sense that defendant found the gun mere minutes before being pulled

5

over. It alternatively argued that if the jury believed defendant's testimony, defendant had time to dispose of the gun by calling his son to come get it or stopping at a gas station.

¶ 19    Defense counsel argued that there was no testimony that defendant procured or retrieved the gun; rather, the testimony indicated that defendant was unaware of the gun until a few minutes before being pulled over. He claimed that a driver does not necessarily know of everything within the car. Counsel further contended that there was no testimony that defendant had time to carefully dispose of the gun such that no one would get hurt.

¶ 20    The court instructed the jury that:

> "Possession is a voluntary act if the person knowingly procured or received the thing possessed, or was aware of his control of the thing for a sufficient time to have been able to terminate his possession.

> * * *

> To sustain the charge of aggravated unlawful use of a weapon, the State must prove *** defendant knowingly carried a firearm; *** when the defendant did so, he was not on his own land, or in his abode, or in his fixed place of business; and *** defendant had not been issued a currently valid Firearm Owner's Identification Card or a currently valid license under the Firearm Concealed Carry Act.

> * * *

> To sustain the charge of unlawful possession of a weapon by a felon, the State must prove *** defendant knowingly possessed a weapon; and *** defendant had previously been convicted of a felony."

At 11:20 a.m., the jury retired to deliberate.

6

¶ 21    At 1:15 p.m., the jury sent a question to the judge asking, "What is the legal definition of knowingly as it relates to the first proposition of the charge of aggravated unlawful use of the weapon?" Over no objection, the court answered with Illinois Pattern Jury Instructions, Criminal, No. 5.01B (approved Oct. 28, 2016), "A person acts knowingly with regard to the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists." At 2:38 p.m., the jury sent a question to the judge asking, "Please define 'sufficient time' in regard to the definition of possession." With the agreement of the parties, the court answered, "Defining whether or not sufficient time exists is a question for you to decide." The jury found defendant guilty of AUUW and not guilty of unlawful possession of a weapon by a felon.

¶ 22    Counsel filed a posttrial motion arguing that the State failed to prove every element of unlawful possession of a weapon without a FOID card, the verdict was based on facts that did not exclude every reasonable hypothesis consistent with innocence, and the verdicts were factually inconsistent. The court stated that it would not speculate as to why the jury did what they did. The jury could have disregarded the stipulation that defendant was a felon or compromised and found what they believed to be the lesser charge. The court stated that it was reluctant to try to figure it out and denied the motion. Defendant was sentenced to three years' imprisonment.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, defendant argues there was insufficient evidence to support his conviction, and counsel was ineffective for failing to raise a necessity defense. We address each issue in turn.

¶ 25                    A. Sufficiency of the Evidence

¶ 26    Due process requires the State to prove each element of an offense beyond a reasonable

doubt. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2; *In re Winship*, 397 U.S. 358, 364

(1970). When reviewing the sufficiency of the evidence in a criminal case, it is not the reviewing

court's function to retry the defendant, nor should it substitute its own judgment for that of the trier

of fact regarding witness credibility or the weight of the evidence. *People v. Muffick*, 2019 IL App

(5th) 160388, ¶ 8. Instead, the reviewing court determines " 'whether, after viewing the evidence

in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v.*

*McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under

this standard, circumstantial evidence can be sufficient to sustain a conviction. *People v. Jackson*,

2020 IL 124112, ¶ 64. "A criminal conviction will not be set aside on a challenge to the sufficiency

of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable

doubt of the defendant's guilt." *Id.* We draw all reasonable inferences in the State's favor. *People*

*v. Vanhoose*, 2020 IL App (5th) 170247, ¶ 25.

¶ 27    The AUUW statute states:

         "(a) A person commits the offense of aggravated unlawful use of a weapon

    when he or she knowingly:

         (1) Carries on or about his or her person or in any vehicle or concealed

    on or about his or her person except when on his or her land or in his or her

    abode, legal dwelling, or fixed place of business, or on the land or in the

    legal dwelling of another person as an invitee with that person's permission,

    any pistol, revolver, stun gun or taser or other firearm; [and]

8

***

(3) ***

* * *

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card[.]" 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2018).

To support a finding of possession, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the contraband and control over the contraband or immediate and exclusive control of the area where the contraband was found. *People v. Hunter*, 2013 IL 114100, ¶ 19; *People v. Day*, 51 Ill. App. 3d 916, 917 (1977).

¶ 28    Defendant does not dispute that he possessed the gun but argues that he did not voluntarily possess the firearm such that he was criminally liable. He explains that he found the gun three to five minutes before he was pulled over for a traffic stop. After finding the firearm, he chose the quickest and safest method to terminate his control over the firearm by taking the weapon to his niece's home so that she could take it to a "no questions asked" program to safely dispose of the firearm.

¶ 29    "A material element of every offense is a voluntary act ***." 720 ILCS 5/4-1 (West 2018). As the trial court instructed, "Possession is a voluntary act if the offender knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have been able to terminate his possession." *Id.* § 4-2. Accordingly, the State can prove voluntariness by proving that defendant knowingly procured or received the firearm *or* was aware of his control for a sufficient time to terminate his possession.

9

¶ 30    Defendant's argument mistakenly assumes that the evidence only supported a finding that he found the gun a few minutes before being pulled over. The evidence showed that defendant informed officers of the gun's location, and defendant was driving the car in which the gun was located. The State also presented evidence that defendant shared the car with his girlfriend, having his own set of keys to the car. This knowledge and control of the premises in which the gun was located gives rise to an inference of possession sufficient to sustain a conviction absent other facts which might create a reasonable doubt as to the defendant's guilt. See *People v. Smith*, 191 Ill. 2d 408, 413 (2000) ("This court has held, however, that the mere presence of illegal drugs on premises which are under the control of the defendant gives rise to an inference of knowledge and possession sufficient to sustain a conviction absent other factors which might create a reasonable doubt as to the defendant's guilt."); *People v. Huth*, 45 Ill. App. 3d 910, 915 (1977) ("[T]he discovery of a particular type of contraband on premises under the control of an accused, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of such contraband, absent other facts which might leave in the mind of the trier of fact a reasonable doubt as to an accused's guilt.").

¶ 31    While Rayford's testimony indicated that defendant was unaware of the gun until immediately before being pulled over, "[t]he State need not disprove or rule out all possible factual scenarios." *People v. Newton*, 2018 IL 122958, ¶ 27. Nor must the trier of fact raise all possible explanations consistent with innocence to a level of reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). The jury may believe as much, or as little, of any witness's testimony as it sees fit. *People v. Tatum*, 2019 IL App (1st) 162403, ¶ 51. It was reasonable for the jury to doubt the truthfulness of Rayford's testimony where her relationship with defendant is clearly a basis for bias. *People v. Jones*, 60 Ill. 2d 300, 306 (1975). Likewise, the jury could reasonably find

10

defendant's testimony not credible where defendant did not dispute that, when he was pulled over, he told officers that he was trying to find his son who was recently shot, but at trial, claimed he was on the phone with his son while he drove to his niece's house to dispose of the gun. Therefore, it was in the purview of the jury to find the testimony in favor of defendant not credible and believe the State's evidence that defendant knew of the gun before he allegedly pulled over to find his phone. See *Muffick*, 2019 IL App (5th) 160388, ¶ 8 (the jury is to determine the credibility of the witnesses and the weight of the evidence).

¶ 32     We also reject defendant's argument that we can conclude the jury was not sure whether defendant had sufficient time to dispose of the weapon based on its question of "Please define 'sufficient time' in regard to the definition of possession." We will not speculate the "jury's collective intent from a single question that may well have only embodied the curiosity or concern of a single juror." *People v. Spears*, 112 Ill. 2d 396, 409 (1986); *People v. Mullins*, 242 Ill. 2d 1, 28 (2011). Rather, the jury's clear intent occurs when it renders its verdict. *Spears*, 112 Ill. 2d at 409. Accordingly, we find—viewing the evidence in light most favorable to the State—the evidence was sufficient to prove voluntary possession.

¶ 33                     B. Ineffective Assistance of Counsel

¶ 34     Defendant also argues that counsel was ineffective for failing to raise a necessity defense. A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984) (Illinois Supreme Court adopting the *Strickland* standard). To prevail, a defendant must demonstrate counsel provided deficient performance that resulted in prejudice. *People v. Bailey*, 2020 IL App (5th) 160458, ¶ 86. The failure to establish

11

either deficient performance or prejudice precludes a finding of ineffective assistance of counsel. *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 34.

¶ 35   To establish deficient performance, defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms. *People v. Smith*, 195 Ill. 2d 179, 188 (2000). This requires overcoming the strong presumption that counsel's decisions were a matter of trial strategy, which are generally immune from ineffective assistance claims. *Id.* The decision to present a theory of defense is usually a matter of trial strategy. See *Jackson*, 2020 IL 124112, ¶ 106.

¶ 36   Necessity is an affirmative defense that requires the accused was "without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7-13 (West 2018); *People v. Ferree*, 221 Ill. App. 3d 212, 216 (1991). This defense involves a choice between two admitted evils where other options are unavailable. *People v. Haynes*, 223 Ill. App. 3d 126, 128 (1991). "When another alternative exists besides the two evil choices which, if carried out, would cause less harm, then the accused is not justified in breaking the law." *Id.*

¶ 37   In support of his position, defendant contends his case is like *People v. Gullens*, 2017 IL App (3d) 160668. In *Gullens*, a court determined that defendant violated his conditional discharge by being a felon in possession of a weapon. *Id.* ¶ 15. Evidence at the hearing revealed that defendant's younger brother stole the gun from a store and defendant had no knowledge of the stolen gun until after they left the store. *Id.* ¶¶ 5-6, 11-12. When defendant became aware of the gun, he was upset and immediately returned it to the store. *Id.* ¶¶ 11-12. It was about 10 minutes from the time the gun was stolen until defendant returned it. *Id.* ¶¶ 11, 12. Defendant testified that

12

he returned the gun because he did not want to get into trouble. *Id.* ¶ 13. He further averred that he returned the gun himself because he did not believe his brother would return it and everyone he knew with a valid FOID card was at work. *Id.* He testified the only goal in possessing the gun was to return it to the store so that the gun would not be sold in Chicago and used for crime. *Id.*

¶ 38   The appellate court reversed the court's discharge of defendant's probation, finding the elements of the necessity defense were met. *Id.* ¶¶ 23-25, 33. It explained that defendant was not to blame for developing the situation that resulted in the theft of the gun because he did not know the gun was stolen until after he left the store. *Id.* ¶ 23. The court determined that a specific and immediate threat to public safety occurs when a stolen firearm is out on the street. *Id.* ¶¶ 23, 25. It also found that there were no other courses of action available to defendant, noting that defendant testified he did not know anyone available with a valid FOID card, it was reasonable to believe the person who stole the gun would not return it, and it was uncertain that the police would have recovered the gun without defendant taking possession of it. *Id.* ¶ 24.

¶ 39   Defendant argues like the defendant in *Gullens*, he was not to blame for why the firearm was in the vehicle, and while he may have momentarily had possession of the firearm, he was trying to find a safe place to dispose of it. Defendant chose not to toss the gun out in a public area, as suggested by the State, because he feared that a child might find it and potentially injure themselves or someone else. Further, someone else finding a firearm in the street or parking lot would not be a legal transfer of the firearm. Defendant contends he had no other course of action available to him given his circumstances. Therefore, counsel should have raised the affirmative defense as it was likely to excuse defendant's conduct. We disagree.

13

¶ 40 We first note that defendant's argument assumes that the jury was required to believe his and Rayford's testimony that defendant did not know of the gun until he pulled into the parking lot. As we explained above, sufficient evidence was presented to conclude to the contrary.

¶ 41 Nevertheless, defendant had more options than throwing the gun out into the public or driving with the gun. He admitted during his testimony that he could have asked his son—who, according to defendant's testimony, was on the phone with him during these events—or his niece to come get the gun. Defendant could have waited elsewhere in the parking lot until the gun was retrieved. As such, this case is distinguishable from *Gullens* where that defendant did not have anyone else available to possess the gun.

¶ 42 Moreover, a defense of necessity contradicts the defense's theory at trial. To claim the defense of necessity, defendant would have had to admit the elements of the offense. *People v. Trice*, 2017 IL App (4th) 150429, ¶ 31 ("the nature of an affirmative defense assumes the underlying allegations are true"). Counsel argued at trial, as defendant does on appeal, that defendant's conduct did not constitute voluntary possession, a necessary element to convict for AUUW. Consequently, counsel was justified in not presenting the contradictory defense of necessity. See *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 86; see also *People v. Todd*, 178 Ill. 2d 297, 331-32 (1997).

¶ 43 Because driving with the gun was not defendant's only option and the defense of necessity would contradict the defense's theory at trial, trial counsel's decision not to present the defense of necessity was a matter of trial strategy. Defendant therefore fails to establish counsel provided ineffective assistance.

¶ 44                                    III. CONCLUSION

¶ 45    The State presented sufficient evidence to convict defendant of AUUW, and trial counsel was not ineffective for failing to raise a necessity defense. Accordingly, we affirm defendant's conviction.


¶ 46    Affirmed.